72 499
101 148

## THE STATE ex rel. STAMPER v. HOLLADAY.

1. **Township Bonds:** CONFLICTING DECISIONS OF STATE AND FEDERAL COURTS: COMPROMISE OF BONDS. Notwithstanding this court holds the act of March 23rd, 1868, authorizing the issue of township bonds, unconstitutional, and bonds issued thereunder, void, yet since the courts of the United States hold the contrary, such bonds cannot be deemed such absolute nullities as not to be the subject of compromise.

2. ———— : POWER TO COMPROMISE UNDER ACT OF 1877. The act of April 12th, 1877, (Sess. Acts, p. 197,) providing for the compromise, purchase or redemption of municipal indebtedness, while it could not be construed to authorize the compromise of bonds issued without any color of authority, and manifestly creating no debt or obligation which the municipality is bound to pay either in law or equity, will not, on the other hand, be limited to unquestionable claims, but will be construed to include bonds in respect to whose validity courts of co-ordinate jurisdiction differ, such as the township bonds issued under the act of 1868.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*Martin & Priest* for relator.

The requirement of the proviso to the act of 1877 that the township aid act of 1868 shall have been decided to be a constitutional act by the courts of final jurisdiction having cognizance of the question, before any township bond shall be redeemed, is fully met by the decisions of the Supreme Court of the United States. *Cass Co. v. Johnston*, 95 U. S. 360; *Douglass v. Pike Co.*, 101 U. S. 677. In every case adjudicated in a federal court, the decision of that court is "the law of the case" to this court. *Block v. Commissioners*, 99 U. S. 686; *Lytle v. State*, 17 Ark. 608. It could not have been intended by the legislature that a township debt should not be compromised until it was more firmly fastened upon it than by a judgment of the United States courts, which even this court would be bound to respect and enforce.

HENRY, J.—The petition alleges, that in 1871, Randolph county, on behalf of Sugar Creek township, in said county, issued 130 bonds, signed by James Terrill, then presiding justice of the county court of said county, duly sealed and attested, each of which was for the payment of $500, to the Tebo & Neosho Railroad Company, or bearer, ten years after its date and bearing interest at the rate of ten per cent per annum payable semi-annually, for which coupons were attached to the bonds; that these bonds were issued under and in pursuance of the act of the general assembly of this State, approved March 13th, 1868, in payment of a subscription made for said township by the county for capital stock of said corporation, which proposed to build, and afterward did build, a railroad through said township, said subscription having been authorized by a vote of two-thirds

of the qualified voters of said township, at an election held in strict conformity with the provisions of the act; that for the said township the county received the amount of stock so subscribed and paid for and paid the interest on said bonds, as it became due, until the 3rd day of November, 1876; that the Boone county National Bank, on the 22nd day of November, 1880, being the holder of forty-nine of said bonds, recovered a judgment against said county for $10,090, in the circuit court of the United States for the eastern division of the western district of Missouri, on coupons attached to bonds so held; that the county of Randolph, by authority of an act of the general assembly, approved April 12th, 1877, under an order of the county court, has agreed with said bank upon a compromise of its demand on said bonds, coupons and judgment so held by said bank, whereby the principal of the debt will be materially decreased and the interest reduced from ten to six per cent per annum; that new bonds for that purpose have been duly issued by said county under the said act of 1877, but that the State Auditor refused to register them, as required by law, and asks a mandamus to compel him to perform that duty.

The auditor's return is, in effect, a demurrer to the petition, and he relies, as a reason for his refusal to register the bonds, upon the unconstitutionality of the act of 1868, under which the original bonds were issued.

This court, in the case of *Webb v. Lafayette Co.*, 67 Mo. 358, and the Supreme Court of the United States in *Harsh-* *man v. Bates Co.*, 92 U. S. 569, decided the act of 1868 to be in conflict with the constitution of this State, and that subscriptions for stock in corporations by townships, and bonds issued to pay for such stock, were, therefore, of no validity. This court, except the two judges who dissented in *Webb v. Lafayette Co.*, are still of that opinion, but the Supreme Court of the United States in *Cass Co. v. Johnston*, 95 U. S. 365, overruled *Harshman v. Bates Co.*, and declared the act of

1. TOWNSHIP BONDS: conflicting decisions of state and federal courts: compromise of bonds.

1868 to be in harmony with the constitution of this State; and while, with due deference to that tribunal, we still hold that act to be in conflict with our constitution, the circuit court of the United States for the western district of Missouri, following the decision of the Supreme Court of the United States in *Cass Co. v. Johnston*, has rendered a judgment on bonds issued by Randolph county, for Sugar Creek township, and will, of course, continue to render judgment ont ownship subscription bonds until the Supreme Court of the United States shall have returned to the doctrine of *Harshman v. Bates Co.* We cannot say that a bond for the payment of money is a nullity and does not create a debt which is even a subject of compromise while there is a court, beyond the control of this court and having jurisdiction in this State, of suits on such bonds, which holds them valid and renders judgments upon them in favor of the holders. "Giving up a suit or any equivalent proceedings, instituted to try a question of which the legal result is doubtful, is a good consideration for a promise to pay a sum of money for an abandonment thereof." 1 Parsons on Contracts, 439. Abstaining from prosecuting a suit, is equally as good a consideration if the threatened suit is to try a question the legal result of which is doubtful.

Here are two parties capable of contracting with each other, the county for the township, and the bondholders for themselves. The county is authorized to compromise, purchase or redeem any bonds issued by the township. If the validity of the bonds is doubtful, in consequence of the conflicting rulings of this court and the Supreme Court of the United States on this subject, then the county is authorized to compromise with the bondholders. If no doubt exists of their validity, the power is clear under the act of 1877. That power is not restricted by the act to unquestionable claims, but by its terms extends to any bonds which had been issued; and while the statute could not be construed to empower the county to compromise, purchase or redeem bonds issued

*2 ———: power to compromise under act of 1877.*

without any color of authority, and manifestly creating no debt or obligation which the municipality was bound to pay, either in law or equity, the power given does embrace bonds, the right to enforce the collection of which is involved in such doubt as is created by the conflicting decisions of courts, neither of which is subordinate to the other, and either of which has jurisdiction of suits on the bonds. The condition of a county or township would indeed be deplorable, if it had improvidently issued an amount beyond its ability to pay, and had no power to avail itself of a liberal compromise which might be offered by a tender-hearted holder of the bonds, to whom the United States courts are open for the enforcement of his demand for its full amount. The act of 1877 authorizes a county, for any township therein for which bonds have been issued, to compromise, purchase or redeem them, whether due or not, including also judgments on said bonds, and to carry out such compromise, purchase or redemption by issuing new bonds, on the surrender and cancellation of the old bonds or other indebtedness. Under this act the county of Randolph was authorized to make the compromise alleged, and as its exact compliance with the provisions of the act of 1877, is not denied, a peremptory mandamus, as prayed for, against the auditor is awarded. All concur.