Dallas County v. Merrill.

DALLAS COUNTY, *Plaintiff in Error*, v. MERRILL.

77  573
101  148

County Bonds: CONFLICT·OF DECISION BETWEEN STATE AND FEDERAL
    COURTS. The fact that county bonds held void by the courts of this
    State are held valid by the courts of the United States, and, there-
    fore, when transferred to a non-resident holder may be enforced
    against the county, will not authorize the courts of this State to re-
    quire a resident holder of such bonds to deliver them up to be can-
    celled.

*Error to St. Louis Court of Appeals.*

AFFIRMED.

This was a suit against Jacob S. Merrill, the Bank of
St. Louis, and the Metropolitan Bank of St. Louis, to com-
pel them to bring certain bonds of the county of Dallas
into court to be cancelled. The petition was as follows:

1. That on the 8th day of April, 1873, the following
petition was filed in the circuit court of Dallas county:

*To the Honorable Robert W. Fyan, Judge of the Circuit Court
    of the County of Dallas:*

The petition of the Metropolitan Bank of St. Louis,
Missouri, respectfully showeth: That said petitioner is a
corporation, duly incorporated, organized and in existence,
under and by virtue of the laws of the State of Missouri;
that on or about the 5th day of August, 1869, the county
of Dallas, in the State of Missouri, by an order of record,
made and declared by the county court of said county, at
the August term, 1869, for good and valuable considera-
tions, and under and by virtue of the power and authority
conferred upon it by the 14th section of the act next below
cited, subscribed the sum of $150,000 to the·capital stock
of the Laclede & Ft. Scott Railroad Company, a corpora-
tion duly incorporated and organized under and by virtue
of an act of the general assembly of this State, entitled
"An act to incorporate the Laclede & Ft. Scott Railroad
Company," which said act was approved January 11th,

1860, and in payment of said subscription, and under said order, issued 150 bonds of said county of the denomination of and face value of $1,000 each, said bonds being numbered successively from one to 150, inclusive of both numbers, being dated the 1st day of July, 1870, being negotiable and bearing interest at the rate of seven per cent per annum, said interest being payable on the 1st day of January and on the 1st day of July of each year, on the presentation and delivery at the German American Bank, in the City of New York, of the interest coupons attached to each bond; and at the same time, and under and by virtue of the same order, said county made and executed its certain promissory notes, to the number of 6,000, by each of which it promised to pay to the bearer at said bank, the sum of $35, all of said notes being dated on said 1st day of July, 1870, and 150 of them falling due every six months during said period of twenty years, forty of said notes commonly called interest notes, or coupons, being attached to each of said bonds, and being issued for and in consideration of the semi-annual interest on each of said bonds respectively, from the date of its issue until maturity; that by mistake, the date of the said order, under which they were issued, was printed in said bonds as August 17th, 1869, but afterward, to-wit: on or about the 5th day of January, 1871, the issue of said bonds was ratified and confirmed as if said order bore date August 17th, 1869, instead of August 5th, 1869, by the said county court of Dallas county; that afterward, said bonds, with the interest coupons thereon, were delivered by said Dallas county to the said Laclede & Ft. Scott Railroad Company in pursuance of the objects for which they were issued and in the usual course of trade and exchange for value by purchase and assignment from the original holder and various intermediate assignees; that petitioner, before the same were due, became and now is the owner of fifteen of them numbered 1, 2, 5, 8, 9, 10, 11, 12, 13, 14, 19, 21, 22, 23 and 27, and of the interest notes or coupons thereunto

attached, for the semi-annual interest due July 1st, 1872, January 1st, 1873, and from those dates to maturity of the bonds; that the semi-annual interest on said bonds due July 1st, 1872, and due January 1st, 1873, is now due and still unpaid thereon; that although upon said 1st day of July, 1872, and said 1st day of January, 1873, and on divers days between then and now, both at the German American Bank, in the City of New York, and at the office of the treasurer of said Dallas county, and elsewhere, payment of said interest notes or coupons has been demanded, yet the said county of Dallas did not pay the same, nor cause the same to be paid, neither did it place funds to pay the same, either at said bank, or elsewhere, nor had it any funds anywhere on said 1st day of July, 1872, or 1st day of January, 1873, nor since those dates, to pay the same, nor has it raised any funds by taxation or otherwise, for said purpose, but has wholly failed, neglected and refused, and still does fail, neglect and refuse to do so, though often thereunto requested. Wherefore your petitioner prays for an order directing and commanding said county court of Dallas county, forthwith, to provide and set apart funds to pay off said interest evidenced by said coupons, which are herewith filed belonging to your petitioner, in such way and by such means as are provided by law; and in case it shall appear, that said county is not possessed of any funds, property, stock, scrip or assets, the proceeds of which can lawfully be applied to the payment of said interest, that the said county be ordered and commanded to levy a tax upon property within it subject to taxation, sufficient to pay the same, and that they apply the same to the payment of said interest notes, and for such other and further orders and relief as shall be adequate and necessary.

2. That on the 8th day of April, 1873, an alternative writ of mandamus was issued out of the circuit court of Dallas county directed against the county court of Dallas

county in conformity with the request and prayer of the petition aforesaid.

3. That on the 17th day of April, 1873, the county court of Dallas county, respondent in said alternative writ of mandamus, filed in the circuit court of said Dallas county the following return:

Now comes the respondent, and for return to the alternative writ of mandamus issued in the above cause at the instance of the relator, says: Respondent admits that one John R. Gammon, judge of the county court of Dallas county, and Wm. J. Soafman, clerk of said court, did issue certain bonds and coupons, purporting to be the bonds and coupons of the county of Dallas, to the amount of $150,000, said bonds purporting to be issued in payment of stock to the Laclede & Ft. Scott Railroad Company. But respondent states that said Gammon and said Soafman did said act without authority of said county, and without authority of any law then existing and authorizing them so to do. Respondent admits that on the 5th day of August, 1869, the said county court of Dallas county, did make a conditional order purporting to take stock in the Laclede & Ft. Scott Railroad Company to the amount of $150,000; but avers that said order was made without authority and was and is null and void; that said county court subscribed said stock to said railroad company without, in any way, submitting such subscription to the approval or disapproval of the resident voters of said county, nor were said voters permitted to express by vote their disapproval of said proposed subscription, nor did said voters or any of them, vote for said subscription or in any way authorize said county court to make said order. Respondent denies that the county of Dallas, on or about the 5th day of August, 1869, for a good and valuable consideration, under or by virtue of any law of this State, or by any order of record of the county court of said county, did subscribe the sum of $150,000 or any other sum to the capital stock of said railroad company. Denies that said railroad company is

Dallas County v. Merrill.

a corporation duly incorporated or organized under or by virtue of any act of the general assembly of this State. Denies that said county did, under or by virtue of any order of said court, at any time afterward, issue the bonds or coupons in the writ described. Denies that said bonds or coupons were afterward delivered by Dallas county to said railroad company. Respondent says that they have not sufficient knowledge or information to form a belief as to whether said bonds or any of them in the usual course of trade and exchange passed into the hands of the relator. Respondent avers, that said supposed order purporting to authorize the issue of the bonds and coupons of said county in payment of said stock, was upon this express condition precedent, viz: That said bonds shall not be issued and delivered, until such time as said railroad bed or grading shall be completed from Ft. Scott, in the state of Kansas, to the western line or boundary of the county of Dallas, ready to receive the cross-ties, or that said railroad-bed or grading shall be completed from the point where said road intersects the main line of the Southwestern branch of the Pacific Railroad to the eastern line or boundary of said county of Dallas ready to receive the cross-ties. But, as respondent avers, said condition precedent to the authority to issue said bonds, has never been complied with, said road-bed has never been completed, either from Ft. Scott to the Dallas county line, or from Pacific Railroad to the eastern line of said county; that said bonds were issued without authority, and without any order of said court, authorizing or permitting the same to be done, which fact the relator in this cause well knew, when he came into possession of said bonds and coupons.

And respondent further avers that said supposed order was, after its date and before any of said bonds were issued, revoked, rescinded and set aside, so that when said bonds were actually issued, there was no order taking stock in said railroad company on the records of said court, nor any order authorizing or permitting the issuing of said

37—77

bonds or coupons. Respondent further answering, says that the writ of mandamus ought not to be made peremptory, because no judgment in favor of the relator has been rendered in any court against said county on said coupons. Wherefore respondent asks to be dismissed and the application to make said writ peremptory be refused.

4. That on the 17th day of April, 1873, the Metropolitan Bank, relator in said writ, filed in said circuit court the following reply: Now comes the said applicant, and for reply to matter contained in the return of said county court to the alternative writ issued herein, states that the subscription to the Laclede & Ft. Scott Railroad Company of $150,000 and the issue of the bonds and coupons, as averred in the writ, were all made and done under and by virtue of law, and denies that it had any notice, whatever, of any irregularity or want of compliance with any condition upon the part of the county court or judges thereof in issuing said bonds before they came into its possession.

5. That on said last date the said cause was by said circuit court tried on the issues so joined, as aforesaid, at which it was stipulated by the parties that said bonds had in fact been issued in payment of a subscription to the capital stock of the Laclede & Ft. Scott Railroad Company, and that no proposition to subscribe had ever been submitted to the resident voters of said Dallas county, and that said subscriptions had not been voted for by a majority of the resident voters of said county. It was proved at the said trial, that the Metropolitan Bank was an innocent purchaser before maturity of said bonds and coupons. And on said facts so stipulated and proved, said circuit court gave judgment in favor of the respondent and against the relator, and refused to make the said alternative writ of mandamus peremptory, and refused to make the orders and decrees prayed for in said petition. Relator thereupon filed its motion for a new trial, which was overruled by said circuit court, and then filed its bill of exceptions, duly signed, after which relator sued out its writ of error from

the Supreme Court of this State, whereby said cause was carried to said Supreme Court, where, on the record and bill of exceptions said cause was tried on error, and on the 29th day of November, 1881, the Supreme Court gave judgment of affirmance, finding, from said record and bill of exceptions, that before the subscription to the capital stock of the Laclede & Ft. Scott Railroad Company, in payment of which said bonds were issued, said subscription was not submitted to the resident voters of said county, as by law required, and holding for that reason that said bonds and the coupons thereto belonging were unauthorized and void, and of no binding force and effect against the plaintiff herein.

6.   Plaintiff states that at the time of the institution of said suit, the Metropolitan Bank of St. Louis was a banking corporation, organized and existing under the laws of the State of Missouri, and doing business in the city of St. Louis, State of Missouri; that at that date and ever since Jacob S. Merrill, defendant herein was, has been and is president and chief officer of said bank; that in such capacity and with the knowledge of said bank he directed and caused said suit to be instituted and prosecuted to the final judgment aforesaid, in the Supreme Court; that after the judgment of the circuit court aforesaid, and while said cause was pending in the Supreme Court, to-wit:   On the 4th day of September, 1873, the said Metropolitan Bank, by resolution of its board of directors, and with the consent of its stockholders, consolidated with and was merged into the Bank of St. Louis, a banking corporation organized and existing under the laws of the State of Missouri, of which latter corporation Jacob S. Merrill then was and still continues to be the president and chief officer; that in compliance with the terms of such consolidation and merger the Metropolitan Bank, by its said president, transferred and delivered the bonds and coupons aforesaid, to the said president of the Bank of St. Louis, for the use of said latter bank; that said Bank

of St. Louis then had full knowledge of the judgment and pendency of the suit aforesaid, and that the validity of said bonds and coupons were involved therein; that on the 16th day of July, 1877, said Bank of St. Louis suspended business and went into liquidation, leaving said bonds and all the coupons originally attached thereto, except the first five thereof, in the custody and control of said Merrill, who still has and holds them; that said Bank of St. Louis now claims to own the same, and said Merrill claims the right to sell and dispose of the same; that said bonds and coupons are negotiable, being payable to bearer, all the bonds and most of the coupons not yet being due or payable; that disregarding the said opinion and judgment of the Supreme Court of Missouri, the circuit courts of the United States, for the districts of Missouri, hold other Dallas county bonds and coupons of the same issue and series to be valid and binding upon Dallas county, when in the hands of innocent purchasers or holders for value; that the defendants threaten, and as plaintiff believes, intend to transfer and sell said bonds and coupons, to an innocent purchaser, or citizen of some other state than Missouri, with the intent or design of having suit brought for collection of the same in the United States courts, against the plaintiff; that there are 570 interest coupons on said bonds, and unless said bonds and coupons are surrendered to plaintiff and cancelled and defendants be restrained from negotiating the same, plaintiff will be harassed for the next ten years with a multitude of vexatious and unjust lawsuits, whereby plaintiff will or might lose the protection and effect of said final judgment of said Supreme Court in its behalf, they, the defendants, well knowing said bonds and coupons have been adjudged void as hereinbefore alleged, whereby plaintiff will be injured and its right as well as the rights of such innocent purchaser or holder would be prejudiced.

Wherefore plaintiff asks a decree that the defendants be required to deliver up to the plaintiff the bonds herein-

before particularly described, and the coupons belonging thereto, to be cancelled, and that the defendants be restrained and enjoined from transferring or delivering the same to any other party, and for such other and further relief as may be just and equitable.

To this petition the defendants demurred, assigning the following grounds: (1) That the petition does not state facts sufficient to constitute a cause of action. (2) It does not appear by the petition that either the title to the bonds mentioned in the petition or the right to a recovery upon them, was in issue in the cause, in which the Supreme Court rendered an opinion as stated in the petition. (3) It appears by the petition that the Supreme Court merely gave as an opinion its view of a question, not at issue in the cause, but admitted by stipulation to be precisely as the court in its opinion declared. (4) It does not appear by the petition in what manner plaintiff is liable to be injured by reason of defendants' holding said bonds, or that defendants are not responsible for any and all transactions they might have in reference to said bonds, with that portion of the public denominated by the petition as innocent purchasers. (5) It does not appear by the petition by what authority the plaintiff comes into court to sue in behalf of the innocent portion of the community. (6) It does not appear by the petition that plaintiff has not a complete remedy at law against the owner or holder of said bonds, or that it is in danger of losing such remedy. (7) It appears by the petition that the only issue in the cause made in the circuit court of Dallas county by the pleadings was, as to the right of the relators in that case to a mandamus on the county court to levy a tax to pay the coupons filed in said cause, and the judgment in that case can affect no other coupons or bonds. (8) The bonds which plaintiff prays for the surrender of, and which it is asked to cancel, were not in suit in the case the record whereof is set out by plaintiff, and cannot be affected by the judgment of the circuit court in said case. (9) The opinion or judgment

of the Supreme Court can reach no further than the affirm-
ance or reversal of the judgment of the circuit court upon
the case made by the record before it, and it sufficiently
appears by the petition that the issue before the circuit
court was as to the right of the relator in that case to a
mandamus on the county court to levy a tax to pay certain
coupons then and there filed, that the circuit court refused
to make the writ of mandamus peremptory and dismissed
the alternative writ, and the Supreme Court merely affirmed
the action of the circuit court, and defendants submitted
to the judgment of this court, that defendants are not liable
to have the reasons of the Supreme Court given by it for
its action, resolved into judgment in this court as prayed
for by plaintiff, and defendants cannot be affected thereby.
(10) It appears by the petition, that the defendant, the
Bank of St. Louis, is the owner and holder of the bonds
mentioned in the petition, and that said bank was not a
party to the proceeding for a mandamus, and is unaffected
by the judgment in that proceeding.    (11) It does not ap-
pear by the petition that the defendant, Jacob S. Merrill,
was a party to said proceeding or that he has any interest
in the subject matter of this suit.    (12) That whatever
might be the effect of the judgment pleaded by plaintiff
as an estoppel or *res adjudicata* as a defense to a suit on
the bonds or coupons held by the Bank of St. Louis, it
does not give plaintiff any right of action against these
defendants to require the bonds and coupons which have
never been in suit, to be surrendered and cancelled as
prayed for by the petition.    (13) That the present holder
of said bonds took them, as appears by the petition, under
the force and operation of decisions of the Supreme Court
of the State of Missouri then and there unreversed, whereby
a vote of the people of Dallas county was unnecessary to
the validity of said bonds.

*Dyer & Ellis* for plaintiff in error.

If the bonds and coupons are void, as held by this court, and if this result has been solemnly adjudged between the parties to this action, then it is within the jurisdiction of a court of equity to require the defendants to deliver them to the plaintiff for cancellation, and also to restrain the defendants from transferring or negotiating them. The equitable remedy of surrender and cancellation does not depend for its existence upon the manifest and certain loss of legal defense, to the instrument in question. Where an instrument is absolutely void at law, though not so on its face, equity will order cancellation, notwithstanding there is a defense at law. Story Eq. Jur., (Redf. Ed.) §§ 698, 700. If the instrument may be used as a means of vexatious litigation, it should be cancelled. Ib., 700. Equity will require the surrender and cancellation of an instrument void at law, where it may be made the ground of vexatious demands by the holder. Jeremy's Eq., (2 Am. Ed.) 499, 502. Even though there be a good defense at law, and the instrument be void, yet equity will compel a surrender. Willard's Eq., (1 Ed.) 306, 307 ; *Hamilton v. Cummings*, 1 John. Ch. 523. Where the invalidity of the contract will be a defense at law, *pari ratione,* if its illegal character be not apparent on the face of it, this will be a ground for cancellation in equity. Adams' Eq., (Sharswood's Ed.) p. 360; Bispham Eq., (2 Ed.) § 473. So even though Dallas county might successfully plead that the bonds and coupons were void, in the federal courts or elsewhere, yet equity will not, therefore, deny its aid.

There are 570 coupons attached to the fifteen bonds in suit, making 585 distinct causes of action, maturing at intervals during the next ten years. If Dallas county could defeat each one of these causes of action, yet the litigation would be vexatious and oppressive. *Cass Co. v. Green*, 66 Mo. 498. A court of equity " will also give its aid to pre-

vent oppressive and interminable litigation or a multiplicity of suits, * * or against a constantly recurring grievance." *Parker v. Manf. Co.*, 2 Black 545; Mitf. Eq. Plead. by Jeremy, 144, 145; 1 Story Eq., §§ 86, 701; Bisph. Eq., (2 Ed.) § 474. Equity will not deny assistance unless the plaintiff's remedy is as perfect and complete at law as in equity. *Boyce v. Grundy*, 3 Pet. 209; *Insurance Co. v. Bailey*, 13 Wall. 616. Can it be held that our defense in the United States courts against an innocent holder of these bonds would be " as practical and efficient," as " perfect and complete" as our claim of *res adjudicata* is in this court?

In *State v. Holladay*, 72 Mo. 502, this court has decided that bonds circumstanced as these have sufficient value upon which to base a compromise. *A fortiori* they have sufficient value, to become, in a federal court, a cause of action which would be harassing and dangerous to this plaintiff, and against the probability and threat of which, a court of equity will protect us. Certainly a court of conscience ought not to furnish parties with pretexts, by which they may escape, the effect of a final judgment against them. In any event, and from every view of the case, it would be unfair and inequitable to permit these defendants to take advantage of the negotiability of these bonds and coupons, and by negotiating them, to cut off a just defense, which, as to them, is conclusive. 1 Story's Eq., (Redf. Ed.) § 700; Will. Eq., (1 Ed ) 308; Hill Inj., (3 Ed.) 720, *et seq.*

*Thomas C. Fletcher* for defendants in error.

The plaintiff cannot be heard in a court of equity to invoke its interference with the Bank of St. Louis or with Merrill to prevent the disposal of the bonds, merely because the rights and remedies of citizens of the United States are alleged to be other than the rights and remedies of citizens of this State in the courts of the State. The reason assigned by the pleader for the interference of this

court is conclusive of the inequity of the prayer of the petition. Defendant Merrill is a citizen of the United States. It is not averred to the contrary. His rights and privileges as such cannot be discriminated against by the judicial construction of any law in this State. Const. U. S., art. 4, § 2. It is admitted that the bank was an innocent purchaser for value. If there was any fraud in the issue of the bonds, the county was the guilty party. It is averred that the bonds may have some value in the hands of a non-resident of the State. Will a court of equity, under these circumstances, aid the county to wrest them from defendants, and thus consummate the fraud? Will this court assume that the United States courts will do an unlawful thing, and will it undertake to deprive a citizen of his property merely to prevent such property from hereafter becoming subject to the jurisdiction of the courts of the United States?

PER CURIAM.—It appears from the record in this case that the Metropolitan Bank was an innocent purchaser before maturity of the bonds and coupons, which the plaintiff asks to have delivered up and cancelled. Notwithstanding this fact appeared in the mandamus proceeding set out in the petition, this court affirmed the judgment of the circuit court refusing a peremptory writ of mandamus to compel the county of Dallas to levy a tax to pay the coupons alleged in that proceeding to be due and unpaid. It appears from the petition that the circuit court of the United States for the district of Missouri hold Dallas county bonds, of the same issue and series declared void by this court in the mandamus proceeding aforesaid, to be valid and binding upon Dallas county, when in the hands of innocent purchasers or holders for value. In the case of the *State ex rel. Stamper v. Holladay*, 72 Mo. 499, this court held that bonds thus circumstanced are not nullities in the hands of the holders thereof, and as the holders are declared by the United States courts to have property

therein, we think it beyond the province of this court to undertake to destroy in the hands of citizens of the United States that which the courts of the United States declare to be property. We have exhausted our jurisdiction in declining to enforce such bonds as valid obligations, and do not think we can lawfully go to the extent we are now asked to go.

The judgment of the court of appeals will be affirmed. SHERWOOD, J., dissents.