The State ex rel. Prairie Township v. Walker.

————

THE STATE *ex rel.* PRAIRIE TOWNSHIP v. WALKER, *State Auditor.*

1. **Township Railroad Aid Act: CONSTITUTION.** The fifth section of the act of 1868, to facilitate the construction of railroads (Laws 1868, p. 93), being unconstitutional and void (*Webb v. Lafayette County,* 67 Mo. 353), could furnish no valid authority to a township which had subscribed to a railroad to retain the taxes collected from such railroad, and they were properly paid into the state treasury, and, being so paid, the general assembly could not refund them to the township.

2. **Constitution: STATUTE.** The act of the general assembly of March 19, 1881 (Laws of 1881, p. 189), providing for the refunding of said taxes to the townships by the state, *held,* unconstitutional.

*Mandamus.*

WRIT DENIED.

*E. J. Smith* for relator.

(1) The state auditor should be compelled to draw his warrant as asked by relator. Laws of 1868, p. 92; Laws of 1881, pp. 189, 190. (2) The people of the county, relying on the validity of the fifth section of the act of 1868, were induced to make the subscriptions to the rail-roads, and to assume a liability which is held to be bind-ing on them, by a court of competent jurisdiction, so that as they must pay the debt, it is not for the state, which held out this inducement to them, to withdraw .

this consideration and to leave them to suffer without its benefits. (3) The act of 1881 was passed since the decision in *Webb v. Lafayette County*, and is a legislative expression that this money should be paid ; it is an appropriation to pay it and there is no constitutional provision forbidding it.

*Smith & Krauthoff* for respondent.

(1) Section one of the act of March 23, 1868, was a "legislative abortion," and so far as it authorized a township to become a stockholder in, or to loan its credit to, a railroad, it was violative of section fourteen, article xi, of the constitution of 1865. *State v. Brassfield*, 67 Mo. 331 ; *Webb v. Lafayette County*, 67 Mo. 353 ; *State v. Satterfield*, 54 Mo. 392 ; *Hayes v. Dowis*, 75 Mo. 250. (2) Said act is also in conflict with section 13 of article xi, of the constitution of 1865. Section 5 of said act is clearly violative of the constitution of 1865, for the reasons set forth in the opinion in *Webb v. Lafayette Co.*, 67 Mo. 353. (3) Said fifth section was also a continuing act of appropriation, by the terms of which the amount of taxes collected from the portions of railroad property referred to were appropriated annually to such townships as may have subscribed to the capital stock of the company owning the same. For this last reason, it was repealed by the constitution of 1875. Const., art. 4, sec. 3 ; art. 10, sec. 19 ; *State ex rel., etc., v. Holladay*, 64 Mo. 526 ; *State ex rel. v. Holladay*, 66 Mo. 385. (4) The act of 1881 is void, and hence relator's claim cannot be upheld. (5) Nor can it be said that the townships who have subscribed to the capital stock of a railroad company, have a vested right to receive all the state taxes collected on the property of said company, under the provisions of the fifth section of the act of 1868, for the obvious reason that against the state, no township or other subdivision can have vested right in or to any portion of the property or revenue of the state. *Conner v. Bent*, 1 Mo. 235 ;

OCTOBER TERM, 1884.                     43

The State ex rel. Prairie Township v. Walker.

*State v. St. Louis Co. Ct.*, 34 Mo. 545–67; *St. Louis v. Shields*, 52 Mo. 351; *State v. Holladay*, 70 Mo. 137; *School Districts v. Weber*, 75 Mo. 558. (6) The plaintiffs had no right to these taxes except such as was given to them by the legislature, and this right was subject to be diminished, changed, modified, and even destroyed at the pleasure of the state. *Richland Co. v. Lawrence Co.*, 12 Ill. 1–8; *School Trustees v. Tatman*, 13 Ill. 30; *Police Jury v. Shreveport*, 5 La. Ann. 661; *Youngs v. Hall*, 9 Nev. 212; Cooley Const. Lim. 238, and note 3. (7) There is no provision of the constitution or principle of common right that in any wise abridges this power. 1 Dill. on Mun. Corp. (3 Ed.) secs. 61, 52, and note 1 to sec. 57, and note 1 to sec. 56, p. 78; *State v. R. R. Co.*, 3 How. 550; *East Hartford v. Bridge Co.*, 10 How. 534; *Darlington v. New York*, 31 N. Y. 164, 187, *et seq.;* *Payne v. Treadwell*, 16 Cal. 221–233, *et seq.;* *San Francisco v. Canavan*, 42 Cal. 541–557; *Lucas v. Commissioners*, 44 Ind. 524; *Amite City v. Clemens*, 24 La. Ann. 27. (8) The fifth section of said act of 1868 is not in any wise in the nature of a contract, under which vested rights could accrue. (9) While the relator's claim must fail because of the expiration of the appropriation contained in the act of March 19, 1881 (Const., art. 10, sec. 19; 64 Mo. 526; 66 Mo. 385), and because there is now no existing appropriation out of which the demand set out in the petition (Const., art. 4, sec. 43; art. 10, sec. 19), the court is respectfully asked to determine the question of the validity of the fifth section of the act of March 23, 1868, when first enacted, and if valid then, the effect of the constitution of 1875, upon its existence. The question is one of vast public interest, and an authoritative determination ·of it is earnestly desired by the interested townships and the revenue officers of the state, and of the various counties affected by it. Large sums of state revenue are being withheld until this court shall settle the controversy by a decision of the question. *Dunklin County v. District Court, etc.*, 23 Mo. 449–454.

RAY, J.—The object of this proceeding is to compel, by mandamus, the state auditor to draw his warrant on the state treasurer for the amount of certain taxes, collected from a railroad company, on its property in the township to whose use this proceeding is instituted, and to the capital stock of which company such township is alleged to have made subscriptions, and to have issued bonds in payment thereof. The acts of March 23, 1868, (acts of 1868, pp. 92, 93), and of March 19, 1881 (acts of 1881, pp. 189, 190), are relied upon by the relators as authorizing such demand. The demurrer of the respondent puts in issue the validity of these acts under the constitutions of 1865 and 1875. The various provisions with which said acts are alleged to conflict, will be indicated in the progress of this opinion.

It may be conceded that if the acts of March 23, 1868, and March 19, 1881, are constitutional and valid enactments, then, upon a proper and sufficient showing, as indicated in the act of 1881, it was the plain duty of the auditor to comply with the demand made upon him, and his refusal to do so would authorize the award of the writ called for. But if said acts are not valid and constitutional enactments, then it was equally his plain duty to refuse, as he did. Under repeated decisions of this court, the question of the constitutionality of the act of 1868 has been settled, and is no longer an open question with this court. *Webb v. Lafayette Co.*, 67 Mo. 353; *State ex rel. Woodson v. Brassfield*, 67 Mo. 331; *Hays v. Dowis*, 75 Mo. 250. In the case of *The State ex rel. Stamper v. Holladay*, 72 Mo. 499, and *The State ex rel. Wilson v. Rainey*, 74 Mo. 229, the former rulings of this court are in no proper sense departed from, but expressly recognized and approved. The correctness of the reasoning in the case of *Webb v. Lafayette County*, *supra*, is so accurate and comprehensive, and so logical and conclusive, that any effort to add to or improve the same is wholly useless, if not out of place.

For the reasons there stated we may confidently rely on the correctness of the rulings in that case and those that follow, and concur therein, and we need not at length here reiterate or re-state them. The fact that in suits, at the instance of bondholders, against said township, a different ruling has been made, and said act of 1868 held valid and constitutional in another tribunal, having jurisdiction and competent authority to pass upon the question, is no reason why, in a proceeding in this court, like the present, we should now depart from our former rulings heretofore made, or grant the relief here prayed for. The fact, also, that the people of Prairie township, Bates county, may have been induced, as alleged, by the seeming authority of the act of 1868, to make said subscription and enter into said contract, while it may be the occasion of much regret and hardship, still, if unconstitutional, as repeatedly held, it furnished no constitutional authority for enforcing its otherwise unauthorized provisions, or for the subsequent 'act of 1881, which is equally invalid as that of 1868, and for the same reasons, and, also, for like reasons under sections 45, 46, and 47, of the fourth article of the constitution of 1875.

In the case of *Webb v. Lafayette County, supra,* the court held that the act of 1868 was unconstitutional and void, because it permits a subscription to be made by a township to the stock of a railroad company, if two-thirds of the qualified voters who vote on the question, at an election, are in favor of it, when the constitution of 1865 required the assent of two-thirds of all the qualified voters to authorize a municipal subscription. It also held the act to be unconstitutional because section five of the act devotes all the state and county taxes, to be collected within any township from any railroad company to which the township has subscribed, to the *reimbursement* of the township for its subscription, and after it is fully reimbursed, then to the *school fund* of the township. This, it was held, is *indirectly* mak-

ing the *state* extend its *aid* to railroads, in violation of section 13, article 11, of the constitution of 1865; and is likewise making the county extend its aid to railroads, without the assent of two-thirds of the qualified voters of the whole county, in violation of section 14, article 11. If that be so, it must follow that the act of 1881, which undertook to provide for the *reimbursement* to certain townships in certain counties of the state of Missouri out of the state revenue, for moneys heretofore paid into the state treasury, claimed to belong to said townships, and, also, to appropriate out of any money in the state treasury, not otherwise appropriated, the sum of two thousand dollars, for the purpose of carrying out the provisions of said act, was, also, necessarily unconstitutional and void, for the like reasons stated in *Webb v. Lafayette County, supra,* and, also, by reason of sections 45, 46, and 47, of the constitution of 1875.

The relator's claim must fail, unless the validity of the act of 1881 can be upheld. This act, as we have seen, is clearly void for the reasons already stated, and it is also objectionable for other reasons. The fifth section of the act of 1868 furnished no valid authority, on the part of the townships, to retain the taxes in controversy, and they were properly paid into the state treasury. Having been so paid, the general assembly, under the former rulings of this court, had no constitutional power, by law, to refund them to the townships to whose use this proceeding is instituted.

Section 53, article 4, of the constitution of 1875, among other things, provides that: "The general assembly shall not pass any local or special law, * * * remitting fines, penalties, and forfeitures, *or refunding moneys legally paid into the treasury.*" If the act in question can be regarded as a special law, it is clearly obnoxious to the constitutional provision above quoted; and if it must be regarded as a general law, then it is clearly invalid under the ruling in the case of *Webb v. Lafayette County, supra,* and, also, by force of sections

45, 46, and 47, fourth article of the constitution of 1875, above referred to. If the legislature had no power to enact such a law, it follows that the court has no authority, by mandamus or otherwise, to compel the state auditor to do what the constitution says shall not be done.

For these reasons the respondent's demurrer to relator's petition is sustained, and the peremptory writ denied. All concur.