| 96 | 29 |
| 105 | 241 |
| 96 | 29 |
| 128 | 111 |

THE STATE *ex rel.* THE QUINCY, MISSOURI & PACIFIC RAILWAY COMPANY, *Plaintiff in Error*, v. HARRIS *et al.*, *Judges Sullivan County Court.*

1. **County Courts, Powers of.** The county courts in this state are only the agents of the counties ; with no powers except those granted and defined by the law, and like other agents must pursue their authority and act within the scope of their powers.

2. ———: SUBSCRIPTION TO STOCK OF RAILROAD : ELECTION : TWO-THIRDS VOTE. The power of a county court to subscribe to the stock of a railroad company under the constitution of 1865 and the General Statutes of 1865 (p. 338, sec. 17), was made to depend on the fact that two-thirds of the qualified voters of the county, at a regular or special election, should assent to such subscription.

3. ——— : ——— : ———. It was not sufficient that two-thirds of those voting at the election voted in favor of the subscription.

4. ——— : EVIDENCE : REGISTRATION BOOKS. The registration books of the voters are admissible in evidence to determine the number of qualified voters of the county.

*Error to Sullivan Circuit Court.*—HON. G. D. BURGESS,
Judge.

AFFIRMED.

*J. P. Butler* and *Edward McCabe* for plaintiff in
error.

(1) The constitution of Missouri of 1865 and the
general laws passed pursuant thereto authorized the
making of the contract of subscription, provided two-
thirds of the qualified voters of such county, city or
town, at a regular or special election to be held therein,
should assent thereto. Const. 1865, sec. 14, art. 11 ;
1 Wag. Stat., sec. 17, art. 11. And *mandamus* is the
proper remedy to enforce contracts made thereunder.
1 Wag. Stat., sec. 22, art. 11. (2) The judgment
should have been for the relator, and the peremptory
writ issued. *State ex rel. v. Mayor*, 37 Mo. 270 ; *State
v. Binder*, 38 Mo. 450 ; *State ex rel. v. County*, 44 Mo.
504. (3) The contention of the relator is that two-
thirds of the qualified voters, as used in the constitution
and laws of Missouri in force at the time of the making
of the contract in question, does not mean two-thirds
of those qualified and entitled to vote, but only two-
thirds of those qualified and actually voting, and is to
be determined from the official return of the result. It
makes no difference how many persons were registered
as qualified voters in said county at the time of such
election, for all qualified voters therein who absented
themselves therefrom are presumed to have assented to
the expressed will of the majority of those voting.
Hence the registration books should have been excluded
and the law declared as requested by the relator.
*County v. Johnson*, 95 U. S. 360 ; *Township v. Rogers*,
16 Wall. 664 ; *County v. Smith*, 111 U. S. 563.
(4) The contract having been lawfully made between

the county and the relator company, and in good faith performed by the latter, the judgment of the circuit court herein impairs the validity thereof, in violation of section ten, of article one of the constitution of the United States. *Bank v. Knoop*, 16 How. 376; *Douglas v. County*, 101 U. S. 677; *County v. Smith*, 111 U. S. 556. (5) We are not unmindful that the supreme court of this state subsequently promulgated a different doctrine from that asserted in the cases first cited. *State ex rel. v. Brassfield*, 67 Mo. 331; *Webb v. County*, 67 Mo. 353; *State ex rel. v. Walker*, 85 Mo. 41. But the settled judicial construction given to the laws of Missouri in the cases first cited, so far as this contract of subscription is concerned, is as much a part of the law as the text itself, and the subsequent change of decision is the same in effect as a repeal or an amendment by legislative enactment, and cannot be permitted to impeach and impair the validity of the contract of subscription sought to be enforced in this proceeding. *Ins. Co. v. Debolt*, 16 How. 432; *Douglas v. County*, 101 U. S. 677; *Railroad v. County*, 53 Mo. 158; *Long v. Long*, 79 Mo. 655, 656.

*A. W. Mullins* for defendants in error.

(1) The subscription in question was not authorized by the assent of two-thirds of the qualified voters of Sullivan county. The constitution of this state, of 1865, provided that "The general assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." And the legislature, in the revision of the statutes next following the adoption of that constitution, made the statute relating to railroad companies conform to the constitutional requirements. Const. of Mo., 1865, art. 11, sec. 14; G. S. 1865, sec. 17, p. 338. (2) In pursuance

of the provisions of the constitution of this state, of 1865, requiring the general assembly "to provide, by law, for a complete and uniform registration, by election districts, of the names of qualified voters in this state," such registration law was enacted and approved, December 16, 1865, and a supplemental act was passed and approved, March 12, 1866, and a revised act was passed and approved, March 21, 1868 ; and under the very rigid requirements of these enactments, in force at the time of the special railroad election in Sullivan county, held February 22, 1870, it was the highest evidence that the persons whose names appeared on the registration books, as qualified voters of said county, were in fact and in law qualified to vote therein. And the names of the qualified voters, appearing on such registration books, was and is the best evidence and controlling test as to the number of qualified voters in said county at the time. Const. of Mo., 1865, art. 2, sec. 4 ; G. S. 1865, p. 904 ; *Id.*, sec. 12, p. 907 ; *Id.*, sec. 18, p. 908 ; *Id.*, sec. 1, p. 910 ; Laws 1868, p. 131 ; *Id.*, sec. 14, p. 135 ; *Id.*, sec. 18, p. 136 ; *Id.*, sec. 35, p. 139 ; *State ex rel. v. Brassfield*, 67 Mo. 331 ; *Webb v. County*, 67 Mo. 353 ; *State ex rel. v. Bader*, 67 Mo. 476; *State ex rel. v. Walker*, 85 Mo. 41. (3) The record discloses that when the special election was held in Sullivan county, February 22, 1870, to vote on the railroad proposition, there were nineteen hundred and forty registered voters qualified to vote at said election in said county, and the returns of the election made to the clerk of the county court, when canvassed, showed that ten hundred and forty-nine votes, only, had been cast in favor of the proposition. There were, therefore, lacking two hundred and forty-five votes of being the requisite two-thirds of the qualified registered voters of the county in favor of the subscription, whose assent had to be obtained in the manner provided by law before any valid subscription could be made by the county court. Such was the constitutional mandate, and so the statute provided.

Authorities *supra*. But the members of the county court then in office, disregarding the registration law and the proper means of ascertaining the number of qualified voters in the county, and assuming that, as ten hundred and forty-nine voters of the county had voted for the subscription and only two hundred and fifty-seven against it, therefore the proposition had carried by the requisite vote—two-thirds of those voting having favored it. "As county courts," however, "are only the agents of the county, with no powers except what are granted, defined and limited by law, like all other agents they must pursue their authority and act within the scope of their powers." And as two-thirds of all the qualified registered voters of the county did not vote in favor of subscribing for the stock and incurring the indebtedness, the action of the county court in undertaking to make the subscription was without authority of law, and not valid or binding as against the county. *Wolcott v. County*, 26 Mo. 272; *Steines v. County*, 48 Mo. 167; *County v. Wilson*, 61 Mo. 237; *Sturgeon v. Hampton*, 88 Mo. 203; *State ex rel. v. Brassfield*, 67 Mo. 331; *Ranney v. Bader*, 67 Mo. 476. (4) Sullivan county was not and is not estopped by the unauthorized acts of its agent, the county court. *Sturgeon v. Hampton*, 88 Mo. 203; *City v. Gorman*, 29 Mo. 593; *Carpenter v. Lathrop*, 51 Mo. 483; *Marsh v. County*, 10 Wall. 676; *Jarrott v. Moberly*, 103 U. S. 580. (5) If, however, the authority had been conferred upon the county court to make the subscription for the stock in relator's company, still, under the terms and conditions of the order of the county court upon which the vote was taken, the railroad company did not become entitled to the bonds, (1) because it failed to "permanently locate" its said road "continuously through the state of Missouri, from West Quincy, in Marion county, in said state, to some point on the Missouri river opposite, or near, Brownsville, in the state of Nebraska,"

and (2) because of a failure on the part of the railroad company to complete the grading, bridging and tieing of the two sections of six miles each, or either of them, in Sullivan county, within the time limited by law,—ten years from the time the company was incorporated,—as shown by the weight and preponderance of the evidence. And full compliance with these conditions of the order, according to its terms, was an essential prerequisite to a right to the bonds. *Wagner v. Meety*, 69 Mo. 150; *State ex rel. v. County Court*, 64 Mo. 30. (6) It is shown in the record that the line of railroad was, in 1880, established west of Milan, in Sullivan county, and it further appeared that the road had subsequently been constructed as far as the city of Trenton, in Grundy county; but that line and route was a total departure from the location required in the order of the county court, that the "said railroad to be located and constructed through said Sullivan county from east to west, on a line as near through the center of said county as practicable," the line from Milan to Trenton having deflected off to the southwest. So, a portion of relator's road has been permanently located and built on a line and route entirely variant from that specified in the county court's order. This is, of itself, material and sufficient to have justified the circuit court in denying the writ. *Wagner v. Meety*, 69 Mo. 150; *State ex rel. v. County Court*, 64 Mo. 30; *Marsh v. County*, 10 Wall. 676.

NORTON, C. J.—This is a proceeding by *mandamus* to compel the judges of the county court of Sullivan county to issue eighty thousand dollars of bonds to The Quincy, Missouri & Pacific Railroad Company, upon the trial of which judgment was rendered for defendants, from which plaintiff has prosecuted a writ of error.

The record discloses the following facts: That The

Quincy, Missouri & Pacific Railroad Company was, on the twenty-ninth day of June, 1869, duly incorporated under the laws of this state for the purpose of building and operating a railroad from West Quincy, on the Mississippi river, in Marion county, to a point on the Missouri river in Atchison county, Missouri, opposite the city of Brownsville, Nebraska; that on the twenty-second day of December, 1869, the county court of Sullivan county made an order that an election be held at the usual voting-places in said county on the twenty-second of February, 1870, for the purpose of ascertaining whether two-thirds of the qualified voters of said county of Sullivan would assent to a subscription of two hundred thousand dollars to the capital stock of said company subject to certain conditions, among which are the following: Said railroad to be located and constructed through said Sullivan county from east to west on a line as near through the center of said county as practicable; said subscription to be paid to said company * * * in the bonds of the county at par, * * * and that whenever said railroad company shall have surveyed and permanently located said road continuously through the state of Missouri from West Quincy, in Marion county, * * * to some point on the Missouri river opposite or near Brownsville, in the state of Nebraska, and should have continuously graded, bridged and tied six miles of said railroad within Sullivan county upon the line * * * designated, then said county of Sullivan, by its county court, would issue and deliver to * * * said railroad company its bonds in payment of such subscription to the amount of forty thousand dollars, and for each additional section of six miles so continuously graded, bridged and tied within said county of Sullivan, said county would issue and deliver to the company an additional sum of forty thousand dollars in the bonds of said county as aforesaid till the whole subscription of two hundred thousand dollars should be paid.

It further appears that in pursuance of law, a special registration of the qualified voters of said county who had become such since the last general registration and subsequent special registrations of the qualified voters of said county made prior thereto, was had and held in the various municipal townships of said county prior to the holding of such special election; that, at said special election, according to the official canvass thereof, ten hundred and forty-nine votes were cast in favor of the proposed subscription and two hundred and fifty-seven votes against it; that the county court of said county, on the day after said election, viz., on February 23, 1870, made an order that, as ten hundred and forty-nine voters of the county had voted for the subscription and only two hundred and fifty-seven against it, therefore the proposition to subscribe for two hundred thousand dollars of the stock of said railroad company had carried; and afterwards, ¡in pursuance of an order of said court, the *ex-officio* president thereof made a formal entry of such subscription on the books of the company.

On the trial, defendants offered in evidence the registration books of Sullivan county made in 1868 for the general election of that year and for a special election in 1869, and the special election held on February 22, 1870; these books were identified by James Morris, clerk of the county court of said county, and F. E. Stone, one of the registration officers, testified as follows: "I have recently examined the registration books identified by Mr. Morris; they are the books used for the general election in 1868, and at the special elections in 1869 and 1870; they were prepared and arranged for use by W. B. Taylor, W. H. Custer and myself (the then registration officers); the thirteen books now shown me were used at the special election held February 22, 1870; Mr. Custer made certified copies of the special registration of voters for the use of the

judges of the election as soon as such registration was completed.''

The registration books were then offered in evidence, to which objection was made, which, being overruled, thereupon the defendants began to read from the registration book of Polk township, in said county, used at the special election February 22, 1870, but before completing the reading thereof, counsel for relator conceded that the registration books offered in evidence, counting all those registered for the general election of 1868, and those added in 1869, and those added for special election February 22, 1870, contained the names of nineteen hundred and forty persons as qualified to vote in said county at said election, and that said names were placed upon said books by the aforesaid registration officers and their predecessors in office for use in the general election of 1868, the special election of 1869, and the special election held February 22, 1870.

The controlling question arising on the record is as to the propriety of the action of the trial court in admitting in evidence the said registration books. The objection to their admission was based mainly on the ground that after the election of February 22, 1870, the county court held that two-thirds of the qualified voters voting at said election had voted in favor of the subscription and directed the subscription to be made, which was thereafter made.

It is established law in this state that county courts are only the agents of the county, with no powers except what are granted, defined and limited by law, and like all other agents they must pursue their authority and act within the scope of their powers. *Wolcott v. Lawrence County*, 26 Mo. 272; *Book v. Earl*, 87 Mo. 246; *Sturgeon v. Hampton*, 88 Mo. 203.

The power of the county court to subscribe to the stock of a railroad company was made by the constitution of 1865, and section 17, page 338, General Statutes, 1865, to depend upon the fact that two-thirds of the

qualified voters of the county, at a regular or special election held therein, should assent thereto. In the case of *State ex rel. v. Brassfield*, 67 Mo. 331, this statutory provision and the provision of the constitution of 1865, which gave origin to the statute, for the first time came before this court for construction, and it is there distinctly held that under these provisions the fact that a majority of voters, voting at an election held for the purpose of determining whether or not a subscription should be made to the stock of a railroad company, voted in favor of the subscription, was not sufficient to confer upon the county court the power to subscribe, but that in order to the exercise of the power it must appear that two-thirds of the qualified voters assented to the subscription by voting in favor of it, and that the mere inaction of such voters by failing to vote did not express such assent within the meaning of section fourteen, article two, of the constitution of 1865. So it was also held in the cases of *Webb v. Lafayette County*, 67 Mo. 353 ; *Ranney v. Bader*, 67 Mo. 476 ; *State ex rel. v. Walker*, 85 Mo. 41.

It is also held in the cases of *State ex rel. v. Brassfield, supra*, and *Ranney v. Bader, supra*, that the registration books may be properly received in evidence for the purpose of establishing the number of qualified voters in the determination of the question whether or not at the election two-thirds of the qualified voters as ascertained by the registration assented to the subscription by voting for it.

Taking in this case the admission that the registration books offered in evidence contained the names of nineteen hundred and forty persons as qualified to vote in said county at said election, it is evident that two-thirds of the qualified voters of the county of Sullivan did not assent to said subscription, as only ten hundred and forty-nine of said voters voted in favor of the subscription. Besides this, while there was evidence tending to

show that the railroad company has complied with the conditions of the subscription, there was also evidence to show that it had not complied, and the trial court might on this ground have well denied the relief asked.

The judgment, for the reasons given, is hereby affirmed with the concurrence of BRACE and SHERWOOD, JJ. ; BLACK, J., concurring in the result, and RAY, J. absent.