## ADKINS v. LIEN, *et al.*, County Commissioners.

Under Const. Art. 9. § 2, declaring that, in counties in which the county seat has not been located by a majority vote, the county ·board shall submit the location thereof at a general election, and "the place receiving a majority of all votes cast at said election shall be the county seat," a majority of the votes cast on such question was insufficient to effect a change of location when it was less than a majority of all the votes cast at such general election.

(Opinion filed Jan. 22, 1898.)

Appeal from circuit court, Roberts county. Hon. A. W. CAMPBELL, Judge.

Statutory contest proceeding to determine the location of the county seat of Roberts county. Plaintiff's demurrer to the answer was sustained, and defendants appeal. Reversed.

The facts are stated in the opinion.

*Howard Babcock* (*A. S. Crossfield, H. H. Potter,* and *Burke & Goodner,* of counsel) for appellants.

The words, "The place receiving a majority of all votes cast at said election shall be county seat of said county", as used in § 2, Art. 9, Const., contemplate a majority of all the votes cast at said election, and not a mere majority of the votes upon the particular question of the location of the county seat Where the framers of the constitution intended to limit the majority to the particular question, they have used language plainly expressive of such intent. §§ 2, 3, Art. 20; § 5, Art. 26; § 1, Art. 23, Const. And this is the general rule. People v. Wyant, 48 Ill. 263; Enyart v. Trustees, 25 Ohio St. 618; People v. Brown, 11 Ill. 479; Everett v. Smith, 22 Minn. 56; Taylor v. Taylor, 10 Id. 107; Bayard v. Klinge, 16 Id. 247; State v. Winkelmier, 35 Mo. 103; State v. Swift, 69 Ind. 505; State v. Frances, (Mo.) 8 S. W. 1; Brown v. Stump, 16 Lea. 481; Banking Co. v. Board, 41 Fed. 321; Smith v. Board, (Minn.) 65 N. W. 956; State v. Babcock (Neb.) 22 N. W. 372; State v. Anderson, (Neb,) 42 N. W. 421; State v. Foraker, (Ohio) 23

N. E. 491, State *ex rel.* v. Lancaster Co., 6 Neb. 474; State v. Bechel, 22 Neb. 160; Douglas County v. Keller, (1895), 43 Neb. 635; Bryan v. Stephenson, (Neb. 1897), 35 L. R. A. 752; Sternberg v. State, (1897), 69 N. W. 849; Southerland v. Goldsboro, 96 N. C. 49; McDowell v. Construction Co., Id. 514; Duke v. Brown, Id. 197; People *ex rel.* v. Berkeley, (Cal.) 23 L. R. A. 838; Chestnutwood v. Hood, 68 Ill. 132; State v. Brassfield, 67 Mo. 331; State v. Mayor, 73 Id. 435; Belknap v. Louisville, (Ky. 1896), 34 L. R. A. 256; Stebbins v. Judge Sup. Ct. (Mich., 1896), 66 N. W. 594; South Bend v. Lewis, (1894), 138 Ind. 512; McCrary, Elections, § 209. The case of Gillespie v. Palmer, 20 Wis. 244, relied upon by respondent, has been condemned by the court that decided it. See Bound v. Railroad, 45 Wis. 567; Sawyer v. Ins. Co. 37 Wis. 524.

*D. C. & W. R. Thomas, Bailey & Voorhees,* and *Aikens & Judge,* for respondent.

The majority received by Sisseton was sufficient, under § 2, Art. 9, Const. Green v. State, 47 Pac. 259; McCrary, Elections, 171, 445; State v. Barnes, (N. D.) 55 N. W. 883; State v. Langlie, (N. D.) 67 Id. 958; State v. Grace, (Ore.) 25 Pac. 382; Metcalf v. Seattle, Id. 1010; Greene v. State, (Idaho,) 47 Id. 259; State v. Echols (Kan.), 20 Id. 523; People v. Town, 106 Cal, 711; Walker v. Oswald (Md.), 11 Atl. 711; Dayton v. St. Paul, 22 Minn. 400; Gillespie v. Palmer, 20 Wis. 544; State v. Greene, 37 Oh. St. 227; State v. Foraker, 46 Id. 694; Curran v. Clayton, 86 Me. 42; State v. Pease, 27 N. Y. 55; Citizens, etc. v. Williams, *et al.* (La.), 21 So. 647; Cass County v. Johnson, 95 U. S. 360; Douglas v. Pike county, 101 Id. 677; Knox county v. Bank, 147 Id. 91; St. Joseph Twp. v. Rogers, 16 Wall. (U. S.), 644.

FULLER, J. Pursuant to the mandate of this court (State v. Lien, 9 S. D. 297, 68 N. W. 948), the board of county commissioners submitted, at the 1896 general election, the question of the location of the county seat of Roberts county to a vote

of the people; and upon the record in this statutory contest proceeding between the only rival candidates, the incorporated towns of Sisseton and Wilmot, it is conceded that 2,248 is the highest number of votes cast at said election; that 1,800 were cast upon the county seat proposition, of which Sisseton received 937, and Wilmot 863. The board of county canvassers found, in effect, that Sisseton, while receiving a majority of the votes cast upon the proposition, had not been selected as the county seat; and for the purposes of this appeal, prosecuted by the defendants from an order of the circuit court sustaining a demurrer to their answer, we shall view the case in the light most favorable to respondent, by assuming the existence of conditions requiring the question to be submitted in conformity with Section 2 of Art. 9 of the Constitution, instead of Section 3 of that article, relating to the question of a change of county seats heretofore located by a majority vote, and which requires, as a condition precedent to the submission of the proposition at the next general election, a petition signed by a majority of the legal voters of such organized county, and which, in order to be effectual, must be sanctioned by two-thirds of all of the votes cast at said election.

Adopting, therefore, to the extent indicated, the theory of respondent, the only essential question is whether the proposition to locate a county seat in an organized county, wherein the same has not been located by a majority vote, requires merely a majority of the votes cast upon the proposition, or the affirmative ratification by a majority of all persons voting for any man or measure at said general election. By Sec. 2, Art. 9, *supra*, it is declared that, "in counties already organized where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the electors of said county at a general election. The place receiving a majority of all votes cast at said election shall be county seat of said county." Subservient to a canon of construction requiring uniformity in the interpretation of

different parts of a constitution pertaining to like subjects, as well as legislative enactments in *pari materia*, we look for aid to other constitutional provisions relating to elections in determining the meaning of the phrase "a majority of all votes cast at said election." By Article 26 of the Constitution, the framers of that instrument, in providing a scheme for its adoption by the people at a general election, employed the following language: "If it shall appear * * * that a majority of all the votes polled at such election, for and against the constitution, are for the constitution, then this constitution shall be the constitution of the state of South Dakota." Respecting the adoption of the article relating to prohibition, the validity thereof was made to depend upon its ratification by "a majority of all votes cast at said election for and against prohibition," and, with reference to minority representation, "a majority of all the votes cast at said election for and against minority representation." As to the temporary capital of the state, "the name of the city, town or place, which shall have received the largest number of votes for said temporary seat of government shall be declared" to be selected for that purpose; and Sec. 2, of Art. 20 directs that "the legislature, at its first session after the admission of this state, shall provide for the submission of the question of a place for a permanent seat of government to the qualified voters of the state at the next general election thereafter, and that place which receives a majority of all the votes cast upon that question shall be the permanent seat of government." Conscious of the disturbing influences which accompany an election for the location of a county seat, the framers of the constitution, to promote the peace and tranquility of society, very wisely limited the submission of such proposition to a general election, which, owing to the formalities which must be observed and the greater diversity of interest engaging the public mind, is doubtless the best agency through which to obtain generally an untrammeled expression of popular will; and, by a provision plainly worded, they declare that

"the place receiving a majority of all votes cast at said election shall be county seat of said county." When construed without unauthorized interpolation, the conclusion is irresistible that a majority of the votes cast upon the question is insufficient to effect a change of location when the number thereof is less than a majority of all the votes cast at said general election. The constitution speaks plainly in reference to a matter wholly in accord with the system of which it forms a component part, and, when viewed in its proper relation, the phrase "a majority of all votes cast at said election" is so transpicuous that no rule of construction has any application thereto. The order appealed from is reversed, and the case remanded for further proceedings consonant with the views herein briefly expressed.