## WILLIAMSON v. ALDRICH et al.

In determining whether a city's limit of indebtedness, prescribed by Const. art. 13, § 4, has been reached, money in the sinking fund and applicable, under the Constitution, only to payment of bonded indebtedness not yet matured, is to be deducted from its debt.

Under Const. art. 13, § 4, prohibiting the incurrence of a debt by a city, unless authorized by "a vote in favor thereof by a majority of the electors of the city," the concurrence therein of less than a majority of all the electors of the city, though constituting a majority of those voting on the proposition, is insufficient.

(Opinion filed, Oct. 2, 1906.)

Appeal from Circuit Court, Brown County. Hon. J. H. McCoy, Judge.

Action by G. N. Williamson against A. N. Aldrich and others. From an adverse judgment, plaintiff appeals. Reversed.

*Taubman, Williamson & Herreid,* for appellant. *L. W. Crofoot* and *C. E. DeLand,* for respondent.

FULLER, P. J. This appeal is from an order sustaining a demurrer to the complaint in an action by a taxpayer to restrain the issuance of municipal bonds by corporate authority in the sum of $35,000 for the purpose of providing the city of Aberdeen with an electric lighting plant. It is conceded that the issuance of these bonds will create a debt in excess of the constitutional limitation unless $38,000 now in the sinking fund applicable only to the payment of bonded indebtedness not yet matured should be deducted in estimating the present total outstanding indebtedness of the city. As Aberdeen has less than 8,000 population, a present bonded indebtedness of $95,000 and taxable property for the year 1905 of the value of $2,000,000 only, the point is controlled by section 4, art. 13 of the Constitution which limits the debt of such a city to 5 per centum of the assessed valuation of its taxable property for the preceding year and expressly provides that "no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of the city." It being affirmatively shown and by the demurrer confessed that there were more than 1,700 duly qualified electors in such municipality at the time of the election and that but 833 voted in favor of the bonds, no question is presented as to the manner of determining what constitutes a majority of all its electors and for a reversal appellant relies measurably upon the fact that the issuance of the bonds has not been "authorized by a vote in favor thereof by a majority of the electors of the city." Such constitutional or statutory language as "a majority of the electors of the state voting at the election," "two-thirds of the votes of a county voting at an election," "a majority vote of the electors of the county," and other similar expressions relating to state and municipal affairs the validity of which is made to depend upon a majority vote, have been construed to mean a majority of the votes cast, and not a majority of all the qualified voters in a state, county, or other voting precinct to be affected thereby. Shearer v. Board of Supervisors, 128 Mich. 552, 87 N. W. 789; State ex rel. Davis

v. White, 162 Mo. 533, 63 S. W. 104; Chamlee v. Davis, 115 Ga. 266, 41 S. E. 691.

Pursuant to article 9 of the Constitution a proposition to change the boundaries of two organized counties must be submitted to the electors thereof at a general election "and be adopted by a majority of the votes cast in each county at such election." As to an election for the relocation of a county seat not previously located by a majority vote, "the place receiving a majority of all the votes cast at that election shall be the county seat of said county," and while it requires a petition signed by a majority of all the legal voters of the county to authorize any subsequent submission of the question to the people it is always the number of votes cast that decides the proposition to establish or change the location of a county seat. So, upon the submission of a great many other questions to the people under the provisions of the Constitution, including amendments thereto, the number of votes cast upon the proposition is expressly declared to be decisive and in order to give any effect to the provision under consideration a distinction must be made between an act inhibiting the creation of a debt by a city until authorized by a vote in its favor by a majority of the electors of such city and such provisions as authorize the performance of acts by a majority of the votes cast.

Clearly, the constitutional restriction is intended to prevent the creation of a debt by a city for any of the purposes specified, without the concurrence of a majority of the qualified electors therein manifested by an affirmative vote in favor of the proposition. So, a majority of those voting is not sufficient, but a majority of all the electors of the city of Aberdeen was vitally essential to the validity of the bonds and in construing constitutional and statutory provisions much less favorable to this view than our own it has been so decided by the courts as follows: Southerland v. Goldsboro, 96 N. C. 49, 1 S. E. 760; People v. Chapman, 66 Ill. 137; State ex rel. v. Harris, 96 Mo. 29, 8 S. W. 794; In re Denny, 59 N. E. 359, 51 L. R. A. 722.

Consistent with what seems to be the weight of well-reasoned authority and upon the theory that taxes assessed and in the pro-

cess of collection are constructively in the treasury, it has been held in this state that warrants issued to defray current expenses within the amount and in anticipation of such taxes do not incur indebtedness to be considered in determining whether the constitutional limit has been reached or exceeded. So, the execution and exchange of refunding bonds for an equal amount of valid outstanding indebtedness in no manner operates to increase municipal liability, and is not repugnant to the Constitution though at the time of their issuance the aggregate debt of the municipality exceeded the constitutional limitation. In re State Warrants, 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852; Western Town-Lot Company v. Lane, 7 S. D. 1, 62 N. W. 982; Shannon et al v. City of Huron, 9 S. D. 356, 69 N. W. 598; Lawrence County v. Meade County, 10 S. D. 175, 72 N. W. 405; City of Mitchell v. Smith, 12 S. D. 241, 80 N. W. 1077; Hyde v. Ewert, Mayor et al., 16 S. D. 133, 91 N. W. 474. In National Life Insurance Company v. Mead, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, the following language is employed: "The argument that the indebtedness is instantly increased by the delivery of funding bonds, unless an equal amount of outstanding obligations is thereby extinguished, is without force where, as in this jurisdiction, available resources or assets may be considered in determining when additional indebtedness is created."

The Constitution prohibits the application of money raised by taxation to a purpose other than that for which it was levied, and prohibits the incurring of indebtedness unless, at or before the time of doing so, an irrepealable provision is made for the collection of an annual tax sufficient to pay interests as it matures, and also the principle when due. Funds thus collected into the treasury constitute the sinking fund irrevocably appropriated to the payment of existing indebtedness. As no contingency will arise that can possibly justify the diversion of any part of the $38,000, now in the sinking fund to a purpose other than the pro tanto diminution of specific indebtedness included in estimating the aggregate liability of the city, there is a clear distinction between such an obligation and the indebtedness of an individual who may or may not pay what he owes and, consequently, his available assets are not to be considered in computing the amount of his actual indebtedness.

It being quite apparent that the primary object of the act restricting such public indebtedness to 5 per centum on the assessed valuation of taxable property was to protect the tax payer and prevent, improvident officers from impairing municipal credit, it seems reasonable to infer that the framers of the Constitution placed the limitation on actual municipal indebtedness for the payment of which taxes must be levied in the future, and not upon apparent indebtedness for the payment of which money has been collected in the sinking fund. It, therefore, follows than in estimating the authorized indebtedness of the city the amount in the hands of the treasurer belonging to the sinking fund and applicable only to the payment of specific debts should be deducted from the aggregate indebtedness of the city and in construing similar provisions it has been so held in numerous cases.

In Krensbein v. the City of Rochester, 78 N. Y. Supp. 813, the court enunciates the prevailing doctrine as follows: "Included among the cash resources of the city are several distinct funds aggregating nearly $6,000,000. The fifth and sixth questions submitted to us for answer are whether these cash resources, or any of them, are to be deducted from the liability of the city in arriving at its indetedness. These funds are set apart pursuant to statutory authority in each instance, and as a rule, to meet some lingering specific indebtedness against the city. If this fund is to be used to reduce the principal of a definite existing liability of the city, we think to that extent it should be deducted in estimating the city's liabilities. The outstanding liability toward the payment of which the fund is to be applied in any given case is includ·d among the debts of the city, for the purpose of ascertaining if it has reached its debt limit. The sinking fund, therefore, which is to be used in diminishing it should be credited to the city upon the other side of the ledger." Upon principle the following cases are directly in point: Bank v. Grace, 102 N. Y. 313, 7 N. E. 162; Kelly v. the City of Minneapolis, 63 Minn. 125, 65 N. W. 115, 30 L. R. A. 281; State v. Hopkins, 14 Wash. 59, 44 Pac. 134, 550; Rice v. City of Milwaukee, 76 N. W. 341; Johnson v. County Commissioners, 7 Okl. 686, 56 Pac. 701; Dively v. the City of

Cedar Falls, 27 Iowa, 227. The conclusion that the $38,000 in the sinking fund should be deducted from the estimated indebtedness of the city of Aberdeen is in harmony with our former decisions to the effect that after the constitutional limit has been reached warrants may be issued in anticipation of taxes levied and valid refunding bonds be executed and delivered in exchange for an equal amount of outstanding indebtedness.

However, the demurrer to the complaint in this action should have been overruled for the reason that the issuance of the bonds in question has not been authorized by the affirmative vote of a majority of the electors of the city, and consequently the order appealed from is reversed.