## TREAT v. DE JEAN, Mayor, et al.

Courts will presume that all electors failing to vote at an election assent to the affirmative vote as shown by the returns.

A municipal taxpayer cannot show, by the registry list or by witnesses, that qualified electors failed to vote at an election, to show that a majority of the electors failed to vote in favor of a proposition submitted.

The result of an election favoring a proposition is conclusive, and not subject to collateral attack for insufficiency of the majority, in the absence of an affirmative showing of insufficiency by admission of the parties, or the result of the vote on other propositions and officers.

(Opinion filed, Nov. 25, 1908.)

Appeal from Circuit Court, Aurora County. Hon. FRANK B. SMITH, Judge.

Action by T. N. Treat against T. C. DeJean, Mayor, and others. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*T. N. Treat* and *James Brown*, for appellant. *S. H. Bakewell* and *A. E. Hitchcock*, for respondents.

CORSON, J. This is an appeal by the plaintiff from findings and judgment in favor of the defendants. It is disclosed by the record that a special election was held in the city of Plankinton on July 16, 1907, to determine the question of whether or not bonds to the amount of $8,000 should be issued for the purpose of constructing a system of sewerage. At the election 144 votes were cast, of which 75 votes were in favor of the issuing of such bonds, and 66 against issuing the same, and thereupon the city council decided that a majority of the voters of the city had voted in favor of the issuing of the bonds, and were proceeding to issue the same when an action was brought by the plaintiff, a taxpayer of said city, to enjoin their issue. Plaintiff claimed that while a majority of the voters' votes cast had been in favor of the issuing of the bonds, a majority of the electors of the city had not so voted. No other question was voted upon at this special election. On the trial of the injunction action the plaintiff offered in evidence the biennial registration list required by the statute of the state, being the regstration list of the city of Plankinton next preceding the election of July 16th, which registration list shows that the number of registered voters in the city was 170. The plaintiff also offered in evidence the pollbooks of the city of Plankinton at the last municipal election preceding the election which was held on July 16th, and which shows that 166 voters voted at such municipal election in the city. The plaintiff also offered in evidence the registration of voters taken by the city assessor between the 16th of May and the 22d of May, 1907, in the city of Plankinton, which shows the number of voters in the city at that time to be 171. The defendant objected to all of this evidence as being incompetent, irrelevant, and immaterial, and the objections were sustained by the court, and the evidence excluded, to which the plaintiff excepted.

Thereafter the plaintiff offered to show by his own testimony that, at the time of the special election, 23 persons whom he named were legal voters in the city, and did not vote at that election, to which the defendant objected, on the same grounds, and that the witness was not competent to make such proof. The objection was sustained and the evidence excluded. The plaintiff also offered to show, by the testimony of each of the 23 voters whom he named, that each was a qualified voter in the city at the time of said special election, and did not vote at that election. To which the same objections were interposed and upon which the same ruling was made. To the findings of fact that 75 votes cast in favor of issuing the sewer bonds were a majority of the electors of said city the plaintiff duly excepted, and also excepted to each of the conclusions of law. The motion for a new trial was made and denied, and from the judgment and order denying a new trial this appeal is taken.

It will thus be seen that the only question presented for the determination of this court is as to whether or not the court erred in excluding plaintiff's evidence, offered for the purpose of showing that there were more than 150 legal voters residing in the city of Plankinton at the time of the holding of said special election, and in the finding of the court that the 75 votes cast in favor of the issuance of the bonds was a majority of the votes upon which the city council was authorized to issue the bonds. It is provided by section 4, art. 13, of our state Constitution that: "The debt of any county, city, town, school district, civil townsip, or other subdivision, shall never exceed five (5), per centum upon the assessed value of the taxable property therein. * * * Provided, further, * * * no such debts shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."

It is contended by the plaintiff and appellant that, under the provisions of the Constitution, no bonds can be issued creating a debt upon the city unless the same has been authorized by a majority of the electors of said city, and that in case of a special election it must affirmatively appear, to authorize the issue of bonds

for any of the purposes mentioned in the section, that the proposition has been approved by a majority of such electors, and that it is not sufficient to show that a majority of those voting upon the proposition voted in favor of such issue. It is contended by the respondent, in support of the findings and judgment of the trial court, that when it affirmatively appears, by a canvass of the votes cast at the special election, that a majority of the votes so cast were in favor of the proposition to issue bonds, the city council was authorized to declare the proposition carried, and to issue the bonds, the issuance of which was so approved by the majority vote, as thus shown by the election. It is further contended by the respondents that the presumption prevails that all of the electors of a municipality not voting assented to the action of the majority of the electors who so cast their ballots in favor of the proposition, and in support thereof the counsel for respondent called our attention to section 2, c. 155, p. 262, Laws 1905, which provides: "The city council of any city of this state may * * * submit the question of the issuance of such bonds to the electors thereof, at any regular election held in such city, or at a special election called for that purpose. * * * If a majority of the electors voting at such election shall cast their vote in favor of the issuance of such bonds the city shall, through its proper officers, without further act, be authorized to issue such bonds to the amount voted, and to sell and negotiate the same." And it is further contended by the respondents that, no method having been provided in the Constitution for determining the manner of ascertaining the number of electors of any municipality voting such bonds, it was competent, for the Legislature provided that a majority of the electors voting at such election shall be taken and deemed to be a majority of all the voters of such municipality. The section of the Constitution and the section of the law before referred to are to be construed together; and, when so construed, the majority of the electors voting constitutes, in legal effect, a majority of all the electors of such municipality.

We are inclined to take the view that the respondents are right in their contention. Counsel for the plaintiff contends that their view is sustained by the decision of this court in the case of

Williamson v. Aldrich, 21 S. D. 13, 108 N. W. 1063, where it was held that a concurrence of a majority of qualified electors of the city of Aberdeen, and an affirmative vote favorable to the proposition, is vitally essential to the validity of the bonds to be issued for the purpose of providing the city with an electric lighting plant, and that a majority of those voting is not sufficient, when it is conceded to be less than a majority of the qualified electors of such city. It was admitted, however, of record in that case that there were 1,700 duly qualified electors in the city at the time of the election, and only 833 votes were cast in favor of the proposition, and consequently no question was presented as to the manner of determining what constitutes a majority of all the qualified electors of the municipality.

In the case of State v. Stakke, 22 S. D. 228, 117 N. W. 129, in speaking of the case of Williamson v. Aldrich, supra, this court says: "In the absence of a more reliable method for determining the number of voters in any township, town, or city, qualified to vote at a special election duly called for the purpose of submitting a single proposition, it may doubtless be assumed that all qualified voters remaining away from such election thereby assent to and concur in the expressed will of the majority of those present and voting at the election. This criterion makes the votes found in the ballot box and correctly canvassed conclusive as to the number of voters in the electoral district, and a favorable vote in excess of one-half the aggregate number of votes thus returned is sufficient to carry the single proposition, although the statute provides that it must receive in its favor the vote of a majority of the qualified electors of such district. However, this numerical test should not be employed to determine the result of the vote on any proposition submitted with other propositions, or at an annual election for the selection of municipal officers, when the returns show that the majority of the votes cast on the proposition is less than a majority of the highest number of votes polled at the election, which, in the absence of better evidence, may be deemed the expression of the aggregate number of qualified voters in the city." In the case of State v. Stakke, supra, the vote taken upon the proposition of authorizing the sale of intoxicating liquors was taken at the general

municipal election, and as it there affirmatively appeared that more votes had been cast for the mayor and other city officers than double the number found to have been cast in favor of the proposition, no majority of the qualified electors of the city was shown. In the case at bar, however, it will be observed that the vote as to the issuance of the bonds in controversy was taken at a special election, at which no other question was voted upon; and hence the decisions in those cases have no application to the case at bar.

It seems to be settled by the great weight of authority that courts will presume that all electors failing to vote at an election assent to the affirmative vote, as shown by the returns of the election; and in our opinion it is not competent for a taxpayer to show, either by the registry list or by the testimony of witnesses, that there were qualified electors of a municipality which failed to vote at such election, for the purpose of showing that a majority of the electors have failed to vote in favor of any proposition submitted to the electors, and we are of the opinion, further, that in the absence of an affirmative showing, either by the admission of the parties or the result of the vote at the election for other officers, upon other propositions submitted, the vote appearing to have been given at the election, if in favor of the proposition, is conclusive, and cannot be questioned in any collateral proceeding. This seems to be the view taken by the Supreme Court of the United States in the case of the County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, and in that case the learned Supreme Court of the United States says: "This we understand to be the established rule as to the effect of elections, in the absence of any statutory regulation to the contrary. All qualified voters who absent themselves from an election duly called are presumed to assent to the express will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted, unless the legislative will to that effect is clearly expressed."

And in the later case of Carroll County v. Smith, 111 'U. S. 556, 4 Sup. Ct. 539, that court again considers the question arising upon the Constitution and laws of the state of Mississippi, and after quoting the Constitution of that state, which reads as follows:

"The Legislature shall not authorize any county, city or town to become a stockholder in, or to lend its credit to, any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a special election or regular election to be held therein, shall assent thereto."—the court says: "It is claimed, on behalf of the plaintiff in error, that the qualified voters referred to in the Constitution of Mississippi, and the charter of the railroad company, are those who have been determined by the registrars to have the requisite qualifications of electors, and who have been enrolled by them as such, and that it requires a vote of two-thirds of the whole number enrolled as qualified to vote, and not merely two-thirds of such actually voting at an election for that purpose, to authorize the issue of such bonds as those in suit." That court then proceeds, after a discussion of the issues raised by the pleadings, and the decisions of the state of Mississippi in Hawkins v. Carroll County, 50 Miss. 761, upon the question in which that learned Supreme Court had taken a different view of the question presented, and concludes as follows: "But the reasoning, as it seems to us, does not meet, much less overcome, the difficulty of the argument. The Constitution of Mississippi, although it does not recognize any voters as qualified, except such as are registered. * * * And yet, if it is to be construed in the clause in question as referring to the registration as conclusive of the number of qualified voters, then no proof is competent to purge the list of those who never were qualified, or have died, removed, or become otherwise disqualified, thus obliterating the distinction between registered and qualified voters; and if, on the other hand, it is to be construed as meaning voters qualified, in fact and in law, without reference to the sole circumstance of registration, then the body of electors is as indefinite as though there were no registration ,and the determination of the whole number, if an actual enumeration is required to determine how many are two-thirds thereof, is completely a matter in pais, and must be inquired of and ascertained, in each case, by witnesses. The difficulty, if not the impossibility, of reaching results by such methods amounts almost to demonstration that such could not have been the legislative intent, or the meaning of the Constitution. The number and

qualification of voters at such an election is determinable by its results, as canvassed, ascertained, and declared by the officers appointed to that duty, or as subsequently corrected by a contest or scrutiny in a direct proceeding, authorized and instituted for that purpose. It cannot be contested in any collateral proceeding, either by inquiry as to the truth of the return, or by proof of votes not cast, to be counted as cast against the proposition unless the law clearly so requires. In our opinion the Constitution of Mississippi did not mean, in the clause under consideration, to introduce any new rule. The assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present, and voting at such election in its favor, as determined by the official return of the result. The words 'qualified voters' as used in the Constitution must be taken to mean, not those qualified and entitled to vote, but those qualified and actually voting. In that connection a voter is one who votes, not one who, although qualified to vote, does not vote." To the same effect are the following decisions: People v. Warfield, 20 Ill. 163; People v. Garner, 47 Ill. 246; People v. Wiant, 48 Ill. 263; Railroad v. Davidson County Court, 1 Sneed (Tenn.) 637, Ang. & Ames' Corp. (9th Ed.) §§ 499, 500; Bridgeport v. Railroad, 15 Conn. 475; Talbot v. Dent, 9 B. Mon. (Ky.) 526; State v. Mayor, 37 Mo. 272; Dillon, Municipal Corporations (4th Ed.) p. 79, note; Smith et al. v. Proctor et al., 130 N. Y. 319, 29 N. E. 312, 14 L. R. A. 408; Taylor v. McFadden, 84 Iowa, 262, 50 N. W. 1070; Louisville R. R. Co. v. County Ct., 1 Sneed (Tenn.) 637; Green v. State Board of Canvassers, 5 Idaho, 130, 47 Pac. 259.

Our conclusion is that the court was clearly right in excluding the evidence offered, and in holding that, inasmuch as a majority of the votes cast at the election were in favor of the proposition, the city council was authorized to issue the bonds in controversy.

The judgment of the circuit court and order denying a new trial are affirmed.