KALMBACH, Appellant v. CITY OF MOBRIDGE, et al., Respondents

(132 N.W.2d 293)

(File No. 10165. Opinion filed December 31, 1964)

**Martens, Goldsmith, May & Porter,** Pierre, for plaintiff and appellant.

**Arend E. Lakeman,** Mobridge, for defendants and respondents.

HOMEYER, J. This is a taxpayer's suit in which plaintiff seeks to enjoin the City of Mobridge and its officers from completing a sale of some municipally owned real estate. The matter was submitted to the court below on a written stipulation of facts. Plaintiff appeals from an adverse judgment of dismissal.

The common council of defendant city on November 4, 1963, adopted a resolution declaring such real estate was no longer used or needed for public purposes and directed it be sold at private sale. Pursuant to such resolution the city treasurer caused notice of sale to be published as required by statute in which was set forth among other things a description of the real estate, the terms of sale, the time and place of sale, viz: December 2, 1963 at 8 p. m. at the city treasurer's office and a requirement that all bids be in writing and delivered to her at the time of sale specified. The notice further described the sale as a "private sale" and stated all sales were to be made by the treasurer subject to the approval of the city council.

Three written bids, each in proper form and each in excess of the appraised value, were submitted to the city treasurer. On December 2, 1963, and immediately after receipt of bids, the treasurer prepared and filed a Report of Sale in which she reported acceptance of the highest of the three bids, amount of such bid, deposit of the necessary down payment, and compliance with other sale requirements. The council was in session that evening and adopted a resolution in which the names of all bidders and the amounts of their respective bids were listed, approved the sale to the high bidder and directed conveyance of title to such purchaser. The resolution also stated that one of the other bidders had appeared before the council and requested permission to orally raise his bid before the sale was approved and such re-

quest had been denied. The amount of such proposed increase is not shown in the resolution or elsewhere in the record.

Plaintiff contends the sale was illegal and void because the subject real estate was not first offered for sale at public auction. We consider the history and effect of the applicable sale statute.

Prior to 1920 there was no statute prescribing procedure on sale of municipally owned real estate not needed or held for public use. In special session that year the legislature enacted Chapter 74 which contained a comprehensive procedure to be followed in disposing of such property, and in Section 3 required that "all sales shall be made at public auction". The next legislature by Chapter 311, 1921 Session Laws, amended such section by adding the portion set out in bold-face type, viz:

"Section 3. All sales shall be made at public auction **or at private sale** to the highest bidder **for cash or** upon such terms as the governing body may direct, **but in no event for less than one-third cash and the balance payable in not more than five years with interest on deferred payments at the rate of not less than six per cent per annum, all deferred payments to be secured by mortgage or contract as may be determined by the governing body, the sale to take place** at the office or room occupied by the treasurer of the municipal corporation, under whose direction all sales shall be made. Notice of sale shall be given by publication in a legal newspaper published within the municipal corporation, for at least once a week for three successive weeks, and if there be no such newspaper, then by posting in three of the most public places therein, at least twenty days before the day of sale. The notice shall contain a description of the real property to be sold, and the time and place of sale. **If no acceptable bid is received at the time of sale fixed in the notice, the property may, within six months thereafter, be sold at private sale for not less than the appraised value and for cash or on terms as hereinbefore provided without further publication."**

This section in all material respects is now SDC 45.2703.

■ The argument is made the legislature by this amendment did not intend to provide an alternate method of sale in the first instance, but only intended to authorize a second method within a limited time if no bids or no acceptable bids were received at public auction; that the phrase "(I)f no acceptable bid is received at the time of sale fixed in the notice" was intended to limit the words "or at private sale" appearing at the beginning of section 3; that express authority for a private sale within six months after an attempted earlier sale shows a legislative intention to restrict private sales to instances where no bids or no acceptable bids were received at public auction. We do not attach such meaning to the amendment.

■■ We believe the statute is clear in its wording and consequently does not need judicial construction. The only legitimate purpose of statutory construction and interpretation is to ascertain legislative intent. When language of a statute is clear, certain and unambiguous, there is no occasion for construction and the court's only function is to declare the meaning of the statute as clearly expressed in the statute. Phelps v. Life Benefit, Inc., 67 S.D. 276, 291 N.W. 919; State ex rel. Widdoss v. Esmay, 72 S.D. 270, 33 N.W.2d 280.

■■ By language which we believe to be clear and free from doubt the legislature by its 1921 amendment provided a second or alternate method to be utilized by the council at its discretion in the first instance in disposing of city real estate. Prior to such amendment it could only be sold at public auction and there was no other method. No confusion exists as to this method. Generally, it imports a sale where oral competitive bids are permitted after notice and invitation to the public to attend and bid, and the property is struck off and sold to the highest and best bidder on a competitive basis. Black's Law Dictionary, Fourth Edition; State ex rel. Danaher v. Miller, 52 Mont. 562, 160 P. 513; In re Bender Body Co., D.C., 47 F. Supp. 224. See also Matthews v. Linn, 78 S.D. 203, 99 N.W.2d 885.

We need not precisely define a private sale, and as employed by the defendant city it encompasses a sale made otherwise than at public auction, i. e., a sale after notice to the public to submit written bids at a specified time and place. Such sales have been held equivalent to a public sale or auction, In re Nevada-Utah Mines & Smelters Corporation, 2 Cir., 198 F. 497, and the terms public sale and public auction have been used interchangeably, and in statutes have been said to be synonymous. In re Newbrough, 254 Mich. 170, 236 N.W. 233; Conway v. Mosher, 55 Ariz. 467, 103 P.2d 465. Also, a sale made on sealed bids has been held to be a public sale. Goodman v. Fisher, 205 Misc. 896, 131 N.Y.S.2d 184. The procedure set forth by the legislature and which defendants attempted to follow is quite similar to the statutory procedure for private sales in probate, SDC 35.1525, where bids or offers must be in writing and submitted at specified places after published notice and a day certain is fixed on or after which sales are to be made. The alternate method for probate sales is at public auction. Of interest too is the statutory procedure for sales of school property, SDC 1960 Supp. 15.2115, which may be made at either private or public sale, and either on sealed bids to be filed and opened by the school board at a specified time and sold to the highest bidder at not less than 90% of the appraised value, or in lieu of sealed bids, by sale at public auction after advertisement.

In our opinion the statute fixing a time and place of sale, whether it be at public auction or at private sale, does not initially confine defendant city to a sale at public auction. Neither does the provision allowing a private sale within six months after an earlier attempted sale show a legislative intent to restrict the city council to attempt to sell at public auction. If we were to read such intent into this provision, it would require us to completely disregard the plain words of the statute by deleting the words "or at private sale". This we cannot do. In Luze v. Bruening, 42 S.D. 414, 176 N.W. 41, which involved location of a schoolhouse, we said: "This proviso in relation to districts having but one schoolhouse is complete, clear, and explicit in its language and intent. In construing this section of statute law, and the said provision thereto, this court is not lawfully at liberty to read into

the proviso language that the Legislature did not see fit to place therein. Neither can this court lawfully nullify and set aside the language that the Legislature has expressly placed therein."

■ ■ Plaintiff also urges because at time of council approval of the sale made by the city treasurer, one of the previous bidders orally announced a desire to raise his bid above that accepted by the treasurer, the real estate was not sold to the highest bidder as required by the statute. This argument is untenable. The sale was made by the city treasurer and she accepted the highest bid submitted to her and sold the real estate to such high bidder subject to the approval of the city council. The council did not make the sale. There is no statute permitting consideration of increased offers by the confirming body and outlining procedure on enhanced bids similar to probate or partition sales. SDC 1960 Supp. 35.1531; SDC 1960 Supp. 37.1437. In view of an oral offer in excess of the one accepted by the city treasurer, the council might properly have refused to approve the sale made, but it was not obliged to do so. Approval or disapproval of the sale reported involved an exercise of judgment and discretion, irrespective of reasons assigned in the resolution. In the absence of illegality, fraud or an affirmative showing of a clear abuse of discretion, a court of equity at the suit of a taxpayer will not restrain a municipality in the disposition of its property. Quackenbush v. City of Cheyenne, 52 Wyo. 146, 70 P.2d 577; Schatz v. City Council of City of New England, N.D., 61 N.W.2d 423; Newell v. City of Kenosha, 7 Wis.2d 516, 96 N.W.2d 845; 64 C.J.S. Municipal Corporations, § 2142, and 18 McQuillin, Municipal Corporations, 3rd Ed., § 52.38, p. 78.

Judgment affirmed.

All the Judges concur.