KUHRT, Appellant v. SULLY COUNTY BOARD OF
EDUCATION, Respondent

(176 N.W.2d 479)

(File No. 10722. Opinion filed April 14, 1970)

■

**Neumayr & Jones,** Gettysburg, for plaintiff and appellant.

**Francis M. Ryan,** State's Atty., of Sully County, Onida, **Ramon A. Roubideaux,** Ft. Pierre, for defendent and respondent.

ROBERTS, Presiding Judge.

The question involved on this appeal is whether a statutory requirement of a majority of the electors in a school district or districts for approval of a plan to create a superimposed high school district contemplates a majority of the votes cast or of the entire electorate.

SDCL 13-6 governs school district reorganization. The statutory provisions which apply to the question before us are as follows:

> "13-6-50. Approval required for creation of high school district—Issuance and distribution of superintendent's order.—In elections for the creation of superimposed high school districts, or county high school districts, if the majority of the electors in the independent district or districts, if any be involved, approve the reorganization, and if the majority of the electors in all of the common school districts, if any be involved, then the county superintendent shall issue an order creating such new school district, which shall from the date of issuance of such order be an existing school district, although it shall not operate as such until the members of its board have been elected and have organized as provided in this chapter. Such order shall be mailed to the state superintendent, the county auditors concerned, and to the chairman or president of each district affected by the order.

"13-6-51. Failure of high school district to receive approval by required majorities.—Should the majority of the electors in the independent school district, if only one be involved or the majority of the electors in the combined vote of the independent school district, or the majority of the electors in the common school district, if only one be involved, or the majority of the electors in the combined vote of the common school districts, affected by such reorganization plan, fail to vote in favor of such proposal, then the plan for such proposed school reorganization shall be considered as having failed."

A superimposed high school is defined "as that district which operates no elementary school program, but which operates a four-year accredited high school" and is superimposed on areas which contain more than one common school district. SDCL 13-5-11. On February 26, 1968, there was submitted to the electors of the Onida and Agar independent school districts and of all common school districts in Sully County, excluding certain sections, for approval or disapproval a plan that the territory contained within Sully County exclusive of an area described on the official ballot at the election be organized into a superimposed high school district. The statutes quoted provide that if the majority of the electors either in the independent districts affected or such combined vote in the common school districts do not approve a plan for a superimposed high school district, then the plan is not approved. Following the election, canvass of the votes by the county board of education showed 151 "yes" votes and 112 "no" votes in the independent districts and 406 "yes" votes and 75 "no" votes in the common school districts. The minutes of the board of February 27, 1968, show the adoption of a resolution that the board determined "from the precinct registration lists of the county and from other evidence" that at the time of the election there were 546 qualified electors in Onida Independent School District and 153 qualified electors in the Agar Independent School District, and that the majority of electors in the independent districts affected by the reorganization did not by a majority of the electors approve the reorganization plan.

The board reconvened on the following day and acting on the opinion of the state's attorney that the statutory provisions in question required only a majority of the votes cast, reconsidered its action and by resolution declared that the proposed reorganization plan had carried. The board directed the county superintendent of schools to issue an order creating the Sully Superimposed High School District. The county superintendent of schools thereupon pursuant to the provisions of SDCL 13-6-48 entered an order giving effect to the result of the canvass and creating the reorganized district. Statutory requirements preliminary to the election have not been attacked and they need not here be considered. Bernell Kuhrt, an elector and taxpayer of the Agar Independent School District, then appealed to the circuit court from such decisions of the board and county superintendent.

The appeal was heard in the circuit court and judgment was entered affirming the reorganization decisions. An appeal thereafter was taken to this court.

■ Section 1, Article VII of the Constitution of this State prescribes the qualification of an "elector" and declares in effect that any person possessing such qualifications shall be entitled to vote at any election. See Carr v. Wakonda Ind. Cons. Sch. Dist., 45 S.D. 261, 186 N.W. 880. The word "electors" includes not only those persons who vote, but also those who are qualified and fail to exercise their rights of franchise. That in effect was the meaning attributed to the word "electors" in Williamson v. Aldrich, 21 S.D. 13, 108 N.W. 1063. However, it was admitted of record in that case that there were 1700 qualified electors in the city of Aberdeen at the time of election and consequently the 833 votes cast in favor of the question submitted did not constitute a majority of the electors of the city. There was then no question presented as pointed out in the opinion therein as to the manner of determining what constitutes a majority of all the qualified electors of a city. See Treat v. De Jean, 22 S.D. 505, 118 N.W. 709; Lavery v. Logan School Dist. No. 1, 28 S.D. 166, 132 N.W. 683.

The respondents in support of the findings and judgment of the trial court contend for the rule that all qualified

electors who absent themselves from an election duly called are presumed to assent to the will of the majority of those voting unless the legislative intention to the contrary is clearly indicated.

In Cashman v. City Clerk of Salem, 213 Mass. 153, 100 N.E. 58, discussing nonvoting and the difficulties of ascertaining a majority computed on the basis of all qualified electors, the court said:

> "It is a fundamental principle of our system of representative government that the will of the majority expressed according to law must prevail. But the majority of those who actively participate in the affairs of state and not of the entire body of voters, controls. Elections must be settled as a practical matter by those manifesting interest enough to vote. Failure on the part of some of the electorate to take the trouble to express their views by depositing their ballots cannot stop the machinery of government. Apathy is not the equivalent of open opposition. It is the nature of our institutions that the majority of those who vote must accomplish the avowed purpose of all elections, which is the choice among candidates or the approval of policies."

As is aptly stated in Munce v. O'Hara, 340 Pa. 209, 16 A.2d 532, 131 A.L.R. 1379: "No method having as yet been devised whereby to compel a complete vote by all the voters, the practical working of the elective system necessarily requires that those who abstain from voting be considered as acquiescing in the result declared by a majority of those who exercise the suffrage."

The great majority of authority holds "that, unless the law providing for an election declares or implies otherwise, all qualified voters who absent themselves from an election duly called are presumed to assent to the expressed will of those voting". See cases cited in annotation following Munce v. O'Hara, supra, 131 A.L.R. 1382; Laconia Water Company v. City of Laconia, 99 N.H. 409, 112 A.2d 58; Dominic v. Davis, Okl. 262 P.2d 143.

The decisions of this court are in accord with the rule stated. In State ex rel. Clark v. Stakke, 22 S.D. 228, 117 N. W. 129, this court said: "In the absence of a more reliable method for determining the number of voters in any township, town or city qualified to vote at a special election duly called for the purpose of submitting a single proposition, it may doubtless be assumed that all qualified voters remaining away from such election thereby assent to and concur in the expressed will of the majority of those present and voting at the election. This criterion makes the votes found in the ballot box and correctly canvassed conclusive as to the number of voters in the electoral district, and a favorable vote in excess of one-half the aggregate number of votes thus returned is sufficient to carry the single proposition, although the statute provides that it must receive in its favor the vote of a majority of the qualified electors of such district."

Treat v. De Jean, supra, was an action to enjoin the issuing of bonds by the City of Plankinton. At the election there were 75 votes in favor of issuing bonds and 66 negative votes. Applying the rule above stated in State v. Stakke, supra, and considering the result determined by the convassing board, this court held that the proposition had carried since it received a majority of the votes cast. Plaintiff sought to prove that there were more than 150 voters residing in the City of Plankinton. It was held that plaintiff taxpayer could not show by registration lists or by witnesses that qualified electors failed to vote at the election and that a majority of electors failed to vote in favor of the proposal submitted.

In Spangler v. City of Mitchell, 35 S.D. 335, 152 N. W. 339, this court construing a statute declaring that no bonds shall be issued unless at an election the legal voters of a city by a majority shall have determined in favor of issuing bonds held that a majority of the votes cast at a special election was sufficient though such majority was not a majority of all the voters of the city. This court quoted with approval the following language set forth in Taylor v. McFadden, 84 Iowa 262, 50 N.W. 1070, regarded as a leading case: "It is contend-

ed that the proposition to authorize waterworks did not receive the required number of votes. It did receive a majority of the votes cast, but not a majority of all the votes which, it is alleged were of the town. The approval must be by a 'majority of the voters of the city or town,' but how is that to be determined? There was no provision for ascertaining the number of persons in the town who were qualified to vote at that election, except as they appeared and voted. It is only by the vote cast that the result of such elections can be determined. That those not voting are to be counted is at variance with our system of elections. Ample notice is provided to electors, and the result must necessarily be determined by the vote cast. The voters of the city or town contemplated in the statute are those who, after the required notice, come to the polls and deposit their ballots."

 The statutes defining the powers and duties of the county board of education will not admit of the construction that the number of qualified electors at the time of election in a school district or districts may be ascertained and declared by the board. The registration lists as provided by law (SDCL 13-7-4) do not afford competent evidence of the number of electors in a district at the time of election. Treat v. De Jean, supra. Many persons who are qualified electors fail to register. The lists would contain names of persons who have died, removed, or have otherwise become disqualified. The court in Board of Sup'rs of Carroll County v. Smith, 111 U.S. 556, 4 S.Ct. 539, 28 L.Ed. 517, considering the argument that records of registered voters furnish the standard by which to determine the number and qualifications of voters said: "The difficulty, if not the impossibility, of reaching results by such methods, amounts almost to demonstration, that such could not have been the legislative intent, or the meaning of the Constitution. The number and qualification of voters at such an election, is determinable by its result, as canvassed, ascertained and declared by the officers appointed to that duty, * * * it cannot be contested in any collateral proceeding, either by inquiry as to the truth of the return, or by proof of votes not cast, to be counted as cast against the proposition, unless the law clearly so requires. * * * The assent of two-thirds of the qualified voters of the

county, at an election lawfully held for that purpose to a proposed issue of municipal bonds, intended by that instrument, meant the vote of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result."

A fundamental rule of statutory construction is that the intention of the legislature must be ascertained, if possible, and that effect be given to such intention. Elfring v. Paterson, 66 S.D. 458, 285 N.W. 443. Accordingly, the requirement of a majority vote is not satisfied by approval of those voting if a contrary legislative intention is clearly expressed. Thus, in School Districts, etc. v. Cook, Wyo., 424 P.2d 751, the court construed a statute which indicated a legislative intent that an election may not be determined by a majority vote in the entire area of a proposed district when it appears that there are more electors in the most populous district than in the remaining area. The fact that there were more persons in the most populous district entitled to vote than in all other districts affected was established of record by stipulation of the parties. To prevent the electors of a most populous district from imposing their will upon the electors of the sparsely populated area the statute construed in the Cook case requires a favorable vote both in the most populous district and in the other area of the proposed district. The consolidation was favored by a majority vote of the entire area, but a majority of votes cast in the area outside of such populous district opposed consolidation. The action here is distinguishable. SDCL 13-6-51, supra, is definite in stating when a vote is inoperative. A proposed reorganization is "considered as having failed" if either in the independent school districts or in the combined areas of the common school districts the plan submitted is not approved by a majority vote. As we have indicated the plan was approved by the combined vote in the independent districts and likewise in the common school districts.

We hold that the plan submitted for the creation of a superimposed high school district received approval by the required majorities.

Judgment affirmed.

RENTTO and BIEGELMEIER, JJ., concur.

HANSON and HOMEYER, JJ., dissent.

HANSON, Judge (dissenting).

To establish a superimposed school district our statutes require the affirmative favorable vote of "the majority of the electors" in the independent and common school districts affected. SDCL 13-6-50 and 13-6-51. It is impossible, in my opinion, to construe "a majority of the electors in a school district" to mean "a majority of the votes cast at a special (school) election".

The word "elector" is a generic term which means a person qualified to vote. The word "voter" is more restrictive and means an elector who has voted. Our legislature used these terms advisedly throughout the school district reorganization law. For example, in SDCL 13-6-49 only a majority of the votes cast at a special election was deemed necessary to include territory in a reorganized school district. In SDCL 13-6-34, 60% of the votes cast in a special election is required and in SDCL 13-6-85 relating to minor boundary changes the petition is required to be signed by "over fifty per cent of the electors residing in the area to be transferred by such boundary change". In SDCL 13-6-86 affecting a major district boundary change the petition is required to be signed "by at least ten per cent of the electors residing in the area to be transferred by such boundary change. Therefore, throughout the new school district reorganization act the terms "voters" and "electors" are used intentionally by the legislature with full knowledge and appreciation of the difference in their meaning.

It is also impossible for me to subscribe to the rule stated in the majority opinion to the effect that when qualified voters absent themselves from the special election it is presumed they assent to the expressed will of those voting. This rule logically and reasonably applies to elections requiring a majority of the votes cast or a majority of the electors voting. It cannot logically be applied to an election which requires "a majority of all electors residing in the district".

The law on this subject and our cases is correctly and fully summarized in the case of Spangler v. City of Mitchell, 35 S.D. 335, 152 N.W. 339, as follows:

"An examination of the many decisions of state courts construing restrictive statutory and constitutional provisions requiring authorization of bonds issued and other matters, at general or special elections, discloses that in most instances the language of the particular statute or constitutional provision is controlling. These provisions group themselves into two classes: First, those which by express words or by necessary implication require only a majority of the votes cast at the election; and, second, those which require the votes of a majority of the electors within the city, or a majority of the electors or of the voters qualified to vote at the election. Statutes and constitutional provisions of both classes exist in this state.

"Adkins v. Lien, 10 S.D. 436, 73 N.W. 909, construed section 2, art. 9, of the Constitution, relating to elections for county seats, which requires 'a majority of all the votes cast at said election.' In that case Justice Fuller said:

" 'The phrase "a majority of all votes cast at said election" is so transpicuous that no rule of construction has any application thereto.'

"Although perhaps not controlling in that case, the statute referred to in Treat v. De Jean, 22 S.D. 505, 118 N.W.709, belongs to the first class, inasmuch as it requires only a majority of the electors 'voting at such election.'

"In the second class is found Williamson v. Aldrich, 21 S.D. 13, 108 N. W. 1063, which construed section 4, art. 13, of the Constitution, enlarging and also restricting municipal indebtedness for certain purposes, unless authorized by a vote in favor thereof, by 'a majority of the electors of such county, municipal corporation,' etc., incurring the same.

This provision was held to require a majority of all the electors within the city. In the same class is Lavery v. Logan School District, 28 S.D. 166, 132 N.W. 683. That decision construed a statute governing the removal of schoolhouses which required a vote of a 'majority of the electors of the entire district.' In State ex rel. [Clark] v. Stakke, 22 S.D. 228, 117 N.W. 129, a similar construction was given a statute which required that 'a majority of the voters of such township, town or city, shall vote in favor of such sale.' Many decisions may be found construing the two classes of statutes and constitutional provisions. Southington v. Southington Water Co., 80 Conn. 646, 69 Atl. 1023, 13 Ann.Cas. 411, note; Battle Creek Brewing Co. v. Board of Supervisors, 166 Mich. 52, 131 N.W. 160, Ann.Cas. 1912D, 946; State ex rel. [Blair] v. Brooks, 17 Wyo. 344, 99 Pac.874, 22 L.R.A.(N.S.) 478.

"The language of the statute under discussion in this case (section 1229, subd. 5, Pol.Code) is as follows:

" 'Provided no bonds shall be issued by the said city council under the provisions of this section either for general or special purposes unless at an election * * * the legal voters of said city by a majority shall be determined in favor of issuing said bonds.'

"To which class does this statute belong? A careful and somewhat extended examination of decisions construing similar statutes leads us to the conclusion that it belongs to the first class, and that it requires only a majority of the votes cast at the special election."

SDCL 13-7-4 provides that voter registration for school districts shall be as provided in Chapter 12-4. Chapter 12-4 contains a comprehensive procedure for keeping the voter registration lists current and correct. According to SDCL 12-4-9 the county auditor is required to provide a list of vot-

ers containing a list of all persons declared by the constitution of the state to be electors and entitled to vote, alphabetically arranged, residing in each voting precinct and independent school district within the county. The registration list must be brought up to date with each boundary change of a precinct or school district. SDCL 12-4-11. The list is kept current semiannually on any changes and deaths, 12-4-18, and annually there must be an elimination of excess names from these lists, 12-4-19. Our voter registration list was comprehensively amended by Chapter 92 of the 1961 Session Laws. Since then it is fairly easy to determine with a reasonable degree of accuracy the number of electors registered in any voting district. I am in agreement with Judge Homeyer this election did not carry by a majority of the electors in the districts affected and the case should be reversed.

HOMEYER, Judge (dissenting).

I would reverse. SDCL 13-6-50 and SDCL 13-6-51 clearly, definitely and unambiguously require more than just a majority vote. These statutes pertaining to creation of superimposed high school districts or county high school districts repeatedly say a "majority of the electors" of the school districts is required. If the legislature had intended as sufficient a "majority of the electors voting at the election" it could easily have said so. It is obvious something more was intended.

With reference to reorganization elections generally, SDCL 13-6-47 and SDCL 13-6-49, the legislature required only "a majority of the [total] votes cast." When language of a statute is clear, certain, and unambiguous, as I believe it here is, there is no need for construction. Kalmbach v. City of Mobridge, 81 S.D. 158, 132 N.W.2d 293; National College of Business v. Pennington County, 82 S.D. 391, 146 N.W.2d 731.

I do not agree that determining the number of electors in a school district prior to a special election creates any great problem or justifies a disregard of express legislative direction.